## Pence v. Shackelford, et al. .

(Decided February 1, 1911.)

## Appeal from Breathitt Circuit Court.

Conveyances—Action to Set Aside as Fraudulent—Transactions Between Father and Son.—While transactions between father and son, because of their close confidential relation, are always looked upon with more or less suspicion, in an action to set aside such a conveyance as fraudulent, the relief sought will be denied where the evidence shows that the consideration was full and fair and free from fraudulent intent.

J. T. HURST, J. J. C. BACH, CHESTER BACH and GRANNIS BACH for appellant.

A. H. PATTON and G. W. FLEENOR for appellees.

Opinion of the Court by Judge Lassing—Affirming.

This appeal involves the right of the appellant Pence, who was plaintiff in the lower court, to set aside as fraudulent a conveyance made by W. S. Shackelford to his son, J. K. Shackelford, and have the land described in this conveyance subjected to the satisfaction of a debt which plaintiff held against W. S. Shackelford.

The record shows that in August, 1894, W. S. Shackelford became indebted to his uncle, W. M. Puckett, in the sum of $500, and executed his promissory note therefor. About the same time he became indebted to him on another note for $100. Upon this $100 note his wife was security. The $500 note was signed by W. S. Shackelford alone. Some time thereafter, W. M. Puckett died, and in the settlement of his estate through the circuit court, these notes, along with other evidences of debt which were held by him, were ordered sold by the master commissioner, and W. D. Back became the purchaser thereof. This sale to Back was made on the 21st day of September, 1905. Thereafter Back transferred the notes to the plaintiff, and plaintiff instituted a suit thereon, and, upon making the proper allegations and affidavit, procured a general order of attachment to be issued and levied upon the land in litigation as the property of W. S. Shackelford. No defense was made to the claim on the $500 note, and judgment went by default. The attachment was sustained and the land ordered sold. The sale was made and reported back to court, but, before confirmation, exceptions were filed to the sale by J. K. Shackelford and George W. Johnson, and in these exceptions they set up the fact that the land which had been levied upon and sold was not the land of W. S. Shackelford, but that J. K. Shackelford was the owner of the fee, subject to the life estate of George W. Johnson therein; that these facts were known to the plaintiff at the time he instituted his suit and later when he caused the land to be levied upon under the attachment; and that, when it was about to be sold by the master commissioner, they, together with their attorneys, appeared and publicly announced that they owned the land, and that it was not the property of the defendant. W. S. Shackelford. The court, upon this showing, permitted the said J. K. Shackelford and George W. Johnson to file an answer, in which they set up the facts disclosed in the exceptions to the report of sale. Issue was joined upon the question of ownership, and, upon proof heard, the court was of opinion that J. K. Shackelford was in fact the owner of the fee of the land, subject to the life estate of George W. Johnson therein; and he accordingly set aside the sale, discharged the attachment, and dismissed plaintiff's claim, in so far as it sought to subject this land to the payment of his debt. From that judgment this appeal is prosecuted.

The record shows that W. S. Shackelford bought the land on the 28th day of March, 1898, from Jane Combs and her husband, and took from them a title bond therefor. $200 of the purchase money was not paid. $200, it appears reasonably well from the record, was paid in the price of a pair of mules. W. S. Shackelford held the land under this bond until the 22nd day of November, 1904, when he and his wife sold, and by title bond conveyed, same to their son, J. K. Shackelford. The consideration for this conveyance was $200 cash paid, his agreement to pay the Combs debt of $200 and interest, the rent accruing from said land for the year 1905, and a $150 mortgage debt which had been placed upon the farm. On the 16th day of February, 1906, J. K. Shackelford paid to Jane Combs the balance of the purchase money due her, and thereupon she and her husband executed to him a deed for the land, reciting therein the consideration as $416 paid.

The decided weight of the testimony is to the effect that J. K. Shackelford, at the time stated, to-wit, November 1904, had paid to his father the $200 which is stipulated as cash paid in the title bond. This money had been paid in various ways, part cash, part in the purchase price of a horse, and part merchandise. He permitted his father to receive the rent from the farm for the year 1905. He paid off the Combs debt. There remained the $150 mortgage lien upon the land, and George W. Johnson held a life interest in it.

The testimony as to the value of the land varies from $300 to $1,000. This wide discrepancy in the opinions of the witnesses in valuing the land, is due, perhaps, to the fact that they were unable to state with any degree of accuracy the number of acres in controversy, some putting it as low as 100 to 120 acres, and others as high as 150 acres. The weight of the evidence is to the effect that the land was worth from $500 to $600, and the fee, subject to the life estate of Johnson, was worth not more than the appellee, J. K. Shackelford, paid for it.

While transactions between father and son, because of their close confidential relation, are always looked upon with more or less suspicion, and should be closely scrutinized, still, where the evidence justifies it, a transaction between them will be given the same faith and credit as one between others not occupying this relation. We have reached the conclusion, upon a careful examination of the record, that the consideration stated in this bond was paid by J. K. Shackelford to his father; and we

are further of opinion that it was a full and fair consideration for the conveyance.

The only question is, was the conveyance made in violation of section 2906 of the Kentucky Statutes, that is, with the fraudulent intent to cheat, hinder, or delay the creditors of W. S. Shackelford in the collection of their debts. If it was, and this fact was known to the purchaser, J. K. Shackelford, then the land must be subjected to the payment of this debt. It is shown by satisfactory proof that the $100 note had been paid off and satisfied, though it was not delivered to W. S. Shackelford in the lifetime of Puckett, who held it. While W. S. Shackelford insists that the $100 note was paid, and the proof fairly supports him in this contention, he admits that only $100 has been paid on the $500 note. Hence, at the date upon which this conveyance was made, this balance on the $500 debt was an existing demand against him, and if the conveyance to his son was made to defeat its collection. and the son knew of this fact, the transaction must be treated as fraudulent.

It appears that W. S. Shackelford, before suit was brought, was approached by a representative of the plaintiff with a view to settling these claims, and at that time he stated that he did not own the land and had not for about a year. It is not made to appear that at the time this sale under the title bond was made to his son, he even contemplated being harrassed or annoyed by this debt which his uncle's estate held against him. There is no evidence to show that either he or his son, when they entered into this transaction, were aiming to defeat the collection of this debt. On the contrary, they each state that the sale was made to the son because the father was unable to pay for the land and did not want to lose the money which he had put into it. There is nothing in appellant's conduct that can be characterized as unfair or lending color to the charge that he was acting with his father in an effort to defeat the collection of this debt. We are strengthened in this conclusion, that the transaction was not fraudulent, by the recitals in the title bond itself, for evidently, if they had been conspiring to perpetrate a fraud in the transfer of this land, they would not have set out minutely in the title bond, which they placed of record, the details of the transaction. Nor would they have waited until suit was brought, or until about that time, to procure the deed for the land to be made from Jane Combs to J. K. Shackelford. All

of these matters could have as easily been arranged in a way so as not to have disclosed the real terms of the trade. The fact that they were not is some evidence that at the time the trade was made they were not contemplating the perpetration of a fraud upon any one.

Judgment affirmed.