## Hiatt v. Price and J. P. Bourne.

(Decided December 19, 1924.)

### Appeal from Garrard Circuit Court.

1. Fraudulent Conveyances—Intent of Grantor to Defraud Creditors Unknown to Purchasers Does Not Make Conveyance Void.—That vendor, when he conveyed property to relatives for valuable consideration, intended to make away with proceeds without paying creditors, does not make such conveyances void under Kentucky Statutes, section 1906, where purchasers had no notice of such fraudulent intent.

2. Fraudulent Conveyances—Evidence Held Insufficient to Show Purchasers Had Notice of Vendor's Fraudulent Intent.—Evidence of facts and circumstances surrounding conveyance by vendor to his nephew and cousin, after which he vanished without paying any creditors, held insufficient to show any participation of purchasers in any plan or intent to defraud vendor's creditors.

3. Continuance—Delay for Purpose of Taking Deposition Properly Denied where, Since Former Continuance, Plaintiff had made no Effort to Take Deposition.—Motion for continuance to take depositions of defendant whose whereabouts were unknown to plaintiff, and to take further deposition of other defendant as if under cross-examination, held properly denied, where continuance had been previously granted, and no effort made to take depositions, nor any showing made that deposition of missing defendant could be had.

L. L. WALKER for appellant.

ROBINSON & KAUFFMAN for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Prior to the 17th day of January, 1922, J. P. Bourne, a resident of Garrard county, was a man of standing in that community. He had held public office and was considered a man of means, having from time to time bought land which he later sold and with the proceeds and profits bought other and more valuable land. However, in the boom of land values which came during the late war and immediately thereafter, he seems to have overreached himself. In one land transaction entered into prior to 1922 he became indebted, as finally determined, to the appellant, J. M. Hiatt, in the sum of about $4,000.00, which sum is yet due. Yet to all outward appearances in January, 1922, J. P. Bourne seemed to be solvent, although he was probably pressed for ready cash.

He then owned a farm which he had bought during peak prices for about $13,000.00, and on which there was a mortgage of some $4,500.00. He was also the owner of some land notes taken in the sale of other farms by him. About this time, the appellant was particularly pressing him for the payment of at least part of the obligation due him, and coincident with this pressure for payment, J. P. Bourne got in touch with his nephew, Price Bourne, the appellee in this case, and also with his cousin, W. S. Bettis, for the purpose of selling to Price Bourne. the farm he then owned, and of selling to Bettis the lien notes above mentioned. There is no evidence beyond the merest sort of a suspicion that either Price Bourne or Bettis knew that J. P. Bourne was negotiating any sale with the other. J. P. Bourne offered to sell the farm he owned to Price Bourne for $3,600.00 and the assumption of the lien upon it above mentioned. This offer Price Bourne accepted. Although the price fixed was far less than J. P. Bourne had paid for the land, yet the deflation in farm values which followed the boom times had long since arrived, and it is very apparent from this record that the price agreed upon between J. P. Bourne and Price Bourne was more than fair. That this was true, was tested by the fact that after Price Bourne had become the owner of the land, he was unable to discharge the lien upon it and in the foreclosure proceedings brought to enforce that lien, but $5,800.00 was realized for the farm.

As stated, while these negotiations were pending between J. P. Bourne and Price Bourne, other negotiations were pending between J. P. Bourne and his cousin, Bettis, looking to the sale of the lien notes above referred to. Bettis does not appear to have been anxious to buy these notes. He was a man who had accumulated some $40,000.00 or $50,000.00 of property and he was cautious. Land values had so fallen that the value of the lien notes taken before the fall was much questioned. Bettis conferred with his counsel, Mr. J. E. Robinson, in order to get his advice as to the value of these notes. Other people, not parties to this litigation, held lien notes of the same series as that Bettis was thinking of buying, and after as careful an investigation as could be made, Mr. Robinson advised Mr. Bettis that if he could get the notes at about thirty five cents on the dollar it would be a good buy, and Bettis so bought them. In pass-

ing, it may be said that after Mr. Bettis had acquired these notes, he, by foreclosure proceedings, with the attendant expense of attorneys' fees and costs, and by buyin some of the land and holding it for a while and improving it, and then reselling it, was able to realize about seventy cents on the dollar on these notes. But in view of the fact that he had to go through all this trouble with its attendant risks, we cannot say that the price Bettis paid for these lien notes was unconscionable or out of line with their real value at the time he purchased them.

After J. P. Bourne had made his respective deals with Price Bourne and Bettis, he met them on January 17, 1922, at the law offices of Robinson and Kauffman in Lancaster. So far as the record shows he did not meet them jointly or at the same time, and it does not appear that either of them knew that the other was having any business or other dealings with J. P. Bourne at the time. It appears that Mr. Robinson, of this law firm, handled the transactions between J. P. Bourne and Bettis, and that Mr. Kauffman those between Price Bourne and J. P. Bourne. By stipulation, it is admitted that each of these attorneys was acting on the matters before him in entire ignorance that his partner had any matters before him in which J. P. Bourne was a party.

In order to raise the money necessary to complete the purchases they had agreed upon with J. P. Bourne, both Price Bourne and Bettis borrowed of the Garrard Bank and Trust Company the necessary funds, but not at the same time, nor as far as this record shows, in concert. This bank was not the regular one of either of these men; but it appears that this bank had for a long time been soliciting the business of both of these men and they were able to borrow at this bank without collateral or surety, whereas the record shows that on the same day, in order to borrow $1,000.00 from the Citizens National Bank, his regular one, Price Bourne had to obtain a surety on his note. The reason then for Price Bourne and Bettis borrowing from the bank they did, is apparent.

On the same day that Price Bourne bought the farm from J. P. Bourne, he also bought some live stock from the latter, and to raise the money for this purpose, he borrowed $1,000.00 from the Citizens National Bank. On its requiring surety on his note, he took the note from the

bank, went out into town and later returned with Bettis, his kinsman, as surety on the note. The evidence shows beyond a peradventure of a doubt that the money thus raised by both Bettis and Price Bourne was paid to J. P. Bourne for the notes and the land and stock and thereupon J. P. Bourne assigned the notes to Bettis and conveyed the farm to Price Bourne.

Price Bourne immediately recorded his deed. J. P. Bourne remained in Lancaster for a day or so after these transactions and then disappeared and has never been heard of from that day to this.

About three months later, the appellant brought this suit against Price Bourne and a like one against Bettis, seeking to set aside the conveyances of the land and notes to these respective parties on the ground that these conveyances were made for the purpose of delaying, hindering and defrauding the creditors of J. P. Bourne, and hence were void as against such credtiors. So far as J. P. Bourne is concerned, it may be conceded that at the time he thus conveyed his property and notes to his nephew and cousin, he did intend to disappear with the proceeds. Still such concession would not necessarily make these conveyances void as to said nephew and cousin. Section 1906 of the Kentucky Statutes provides:

"Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers or other persons, and every bond, or other evidence of debt given, action commenced, or judgment suffered, with like intent, shall be void, as against such creditors, purchasers and other persons. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor."

Under this section it is specifically provided that conveyances, though made with intent to delay, hinder or defraud creditors shall not affect the title of a purchaser for valuable consideration, unless it appears that such purchaser had notice of the fraudulent intent of his grantor. That both Price Bourne and Bettis not only paid a valuable consideration, but the full consideration,

for the property they respectively obtained, is almost undisputed in this record. The only reason then for which it can be urged that these conveyances should be set aside is that the nephew and the cousin knew, at the time they bought the farm and notes, of the intent of J. P. Bourne not to use the proceeds of the sale in the honorable discharge of his obligations, but to confiscate them to his own use and so to defraud his creditors. Both Price Bourne and Bettis testified that they had no notice or knowledge whatever of J. P. Bourne's fraudulent intent; that there was no agreement between either of them and J. P. Bourne to reconvey the property to him in the event of his return. In fact, the subsequent foreclosure proceedings in the case of Price Bourne above mentioned demonstrates this. They further said that J. P. Bourne told each of them that he had to raise some money in order to pay some of his debts, and as each of them was financially well able to venture in the deal proposed to them and as they each thought the property he was buying was worth the money asked, they bought the same; and that at the time each bought his property, each thought that J. P. Bourne was worth from $20,000.00 to $30,000.00. From this statement, it is hard to see how notice of J. P. Bourne's fraudulent intent in the making of these conveyances can be brought home to his vendees. It may be urged that such notice may be surmised from the fact that both of the conveyances were being made at approximately the same time, and to relatives of the defaulting J. P. Bourne. However, it is but natural that a man who is trying to raise money to pay his creditors should first turn for that purpose to those who are related to him, and secondly, it is not shown anywhere in this record that either Bettis or Price Bourne knew what the other was doing. At the best, there is raised only a very slight suspicion as to any concert of action between Bettis and Price Bourne on the one hand and J. P. Bourne on the other. In the case of Ferguson v. May, et al., 4 K. L. R. 989, this court said, "A purchaser in good faith for value is to be favored by the law. The presumption of innocence is in his favor, and, to rebut this, the circumstances must be such as to satisfy the mind that he had notice of the vendor's intention to defraud his creditors." The facts of the case at bar, so far as bringing home to Bettis or Price Bourne notice of J. P. Bourne's fraudulent intent, are no stronger than those

held insufficient to set aside as fraudulent conveyances made for value in the cases of American Brewing Co. v. McGruder, 17 Ky. L. R. 762, 32 S. W. 603; Pence v. Shackelford, 142 Ky. 10, 133 S. W. 956; Interstate Petroleum Co. v. Farris, 159 Ky. 820, 169 S. W. 535, and Carter v. Braswell, 186 Ky. 760, 217 S. W. 1019. We therefore conclude that the appellant failed to show that the appellee or Bettis had notice of any fraudulent intent of J. P. Bourne and therefore that the conveyances to them being for a valuable consideration were not void. The lower court in so adjudging was correct.

Appellant further insists that he was entitled to a continuance on the calling of this case for trial. His grounds for such continuance were that he wished to take the deposition of J. P. Bourne, whose whereabouts he did not know, although he had made diligent inquiry to ascertain the same, and that the appellee did know said address. Appellant further stated as such grounds that after he had taken the deposition of appellee as if under cross-examination in March, 1922, and just after this suit had been filed, he learned from the deposition of the cashier of the Citizens National Bank filed in this case, that the appellee had borrowed the $1,000.00 above referred to at that bank, and that said Price Bourne had stated in his deposition that he had gotten said money from the Garrard Bank and Trust Company, and he wished to recross-examine said Price Bourne in this connection. The appellee filed his affidavit in which he swore that he, too, did not know the whereabouts of said J. P. Bourne, and insisted on a trial at that term of said court. This case was tried at the March, 1923, term of the Garrard circuit court. Under the Code this action stood for trial at the November, 1922, term of that court, but at that term an affidavit for a continuance was filed based on certain grounds not here material, and also on the ground that appellant did not know the whereabouts of J. P. Bourne and that Price Bourne did and he wished to take the deposition of said Bourne. The continuance asked for at the November term was granted, but appellant seems to have made no effort whatever to take the deposition of J. P. Bourne between the November and March terms, nor does he show in this record that he could ever take this deposition even had he been granted the continuance asked for at the March term. No one seems to know the whereabouts of J. P. Bourne, and the

case should not be indefinitely postponed without some reasonable assurance that appellant can find him for the purpose of taking the deposition. This is true especially in view of the fact that appellee's title to the land he had bought was clouded by this suit, and he was entitled to a reasonably prompt trial to have that cloud removed, if he could so do, in order that he might, if he so desired, sell his land. So far as the affidavit for continuance at the March term was based on the stated inaccuracy of Price Bourne's deposition, counsel is in error. After appellee had testified that he had borrowed the $3,600.00 with which he paid for the land from the Garrard bank, appellant asked these questions of Price Bourne and he made these answers:

"Q. Did you let him have any other money? A. Yes. Q. How much? A. I bought some stock from him. Q. Did you buy any notes? A. No, I bought a pair of mules, two cows, a horse and some corn. Q. How much did that come to? A. It came to about a thousand dollars, I think. Q. Did you buy anything else from him? A. No, that was all."

This is all that appears in the deposition about this $1,000.00 and it is clear that Price Bourne made no statement that he borrowed this money from any source nor did appellant when he had opportunity to examine him about this $1,000.00 do so. Having failed to go into the matter when he could have done so, appellant should not thereafter be heard to complain when the case was called for trial because he was not given another opportunity to cross-examine the witness on this point. We do not believe the court abused its discretion in declining to grant appellant a continuance. For the reasons above stated, the judgment in this case is affirmed.