## Coy v. Pursifull.

(Decided May 5, 1933.)

58

E. S. WIGGINS for appellant.

ROBSION & MANNING for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 27, 1924, T. F. Gibson, Henry J. Gibson, and Edw. Pursifull, as principals, executed their note to appellant and plaintiff below, C. C. Coy, for the sum of $5,000, payable twelve months thereafter, with J. J. Pursifull and Wm. M. Gibson as their sureties. J. J. Pursifull died intestate in January, 1929, his wife having died, also intestate, in 1919. The couple never had but one child, the appellee, W. H. Pursifull, who was the sole heir of each of his parents. At the time of the execution of the note, J. J. Pursifull was thought to be in fairly good financial circumstances, and it was positively known that the other surety (W. M. Gibson) was quite a wealthy man, and is yet so. In 1930 two of the principals, T. F. and Henry J. Gibson, became bankrupt and were so adjudged in proceedings for that purpose, and their estates are not yet fully settled, but it is conceded that their creditors will receive no dividend. Edward Pursifull, the other principal, is a nonresident and insolvent. At the time the note was executed T. F. and Henry J. Gibson were universally thought to be among the wealthiest men in their community, and stood high in commercial and business circles. Every one thought them perfectly solvent and the owners of property of many thousands of dollars above their liabilities, and that impression prevailed until their bankruptcy proceedings which caused consternation and universal comment at the time it was developed. The makers of the note never renewed it, but plaintiff and appellant annually collected the interest on the original note up to July 27, 1929, and which was every time paid by one or the other of the two Gibsons, who were the supposedly substantial principals therein. A default, however, in interest was made at the due date in 1930 because of the bankruptcy proceeding.

On March 20, 1931, plaintiff filed this equity action in the Knox circuit court against appellee and defendant below, W. H. Pursifull, individually, and as admin-

istrator of his father, J. J. Pursifull, and in his petition he sought to realize the amount of his note upon two grounds: (1) That J. J. Pursifull in July, 1927, about eighteen months before his death, conveyed to defendant, his son, several described parcels of real estate, at least one of which was in Madison county and the others in Knox county, and which were executed either (a) fraudulently and with the design on the part of both vendor and vendee to defeat the creditors of J. J. Pursifull from collecting their debts in violation of the provisions of section 1906 of our present statutes, or (b), that the conveyances were purely voluntary and without consideration, and plaintiff's attack of them was authorized by the provision of section 1907. Ground (2), under which plaintiff sought to collect his debt, consisted in a charge made in the petition that J. J. Pursifull died the owner of a large amount of property which defendant as his sole heir inherited, and which amounted to more than plaintiff's debt, and he sought to collect it under the provisions of section 2088 of our present statutes, charging an heir with liability for his ancestor's debts to the extent of assets received. Defendant's answer put in issue all of the material allegations of the petition, and affirmatively alleged that the conveyances to defendant by his father were for a valuable consideration, and which were made without any fraudulent intent on his part to defraud plaintiff or any other of his creditors; but that if he did entertain any such fraudulent intent defendant had no knowledge thereof. The issue made by ground 2 alleged in the petition was completed by defendant's denial thereof.

Upon submission, after extensive proof taken, the Hon. A. J. Bratcher, a former member of this court, sitting as special judge, dismissed plaintiff's petition and to reverse that judgment he prosecutes this appeal. Plaintiff took the deposition of defendant as upon cross-examination, and inquired of him concerning all of the issues made in the case. Defendant's counsel then examined him concerning the same matters and in some instances went into greater detail than did plaintiff's counsel in their examination, and it is argued on this appeal that the testimony so developed was incompetent under the provisions of subsection 2 of section 606 of our Civil Code of Practice. But we think the incompetency of the witness, conceding him to be so, was

waived by plaintiff introducing him and first examining him upon the various issues involved, as well as upon collateral ones bearing upon them. Plaintiff thereby made him a competent witness, if in truth he was incompetent, and thereby licensed counsel for defendant to develop the facts inquired about relating to the transactions under investigation and for which reason alone we hold that this objection to plaintiff's testimony is without merit.

Plaintiff's counsel cites a long list of cases from this court dealing with the various phases of, and rules of practice concerning fraudulent conveyances, and the disposition that this court made of such cases under the particular facts of each one, and he seeks to bring this case under the doctrines announced in those cases, some of which are: Wyan v. Raisin Monumental Co., 243 Ky. 431, 48 S. W. (2d) 1050; Campbell v. First National Bank of Barbourville, 234 Ky. 697, 27 S. W. (2d) 975; Stewart v. Wheeler, 220 Ky. 687, 295 S. W. 991; Shannon v. Duffield, 218 Ky. 770, 292 S. W. 322, 323; Griggs v. Crane's Trustee, 179 Ky. 48, 200 S. W. 317; Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050; Magic City Coal Co. v. Lewis, 164 Ky. 454, 175 S. W. 992; and Pence v. Shackelford, 142 Ky. 10, 133 S. W. 956. Others will be found cited in those opinions, and still others may be found in the notes to the two sections of our statute, supra, and which it is plainly unnecessary for us to incorporate herein. Suffice it to say that the burden is on plaintiff in such actions to prove the fraud relied on by him, or to prove such facts as will shift the burden of proof to the defendant to show the fairness of the transaction. The latter occurs, according to our opinions and those of other courts, when certain facts and circumstances are shown by plaintiff to exist, such as a confidential relationship of the parties; badges of fraud of sufficient weight to cast a suspicion upon the transaction amounting to a presumption, and which badges of fraud are, inadequate consideration, misrepresentation of the consideration in the conveyance, and other conditions that will be found dealt with in our opinions, supra, and which are unnecessary for us to here mention.

The first attack (a), under ground 1, is bottomed, as we have seen, upon section 1906 of our statutes, and which renders the transaction fraudulent as to credi-

tors, notwithstanding there may have been a valuable consideration, provided it was entered into with the fraudulent intent on the part of the vendor or transferor to defeat his creditors, and the vendee or transferee had knowledge thereof. If either of such necessary elements is absent, then plaintiff will fail in his attack. Section 1907 furnishing the grounds of attack in subdivision (b) of ground 1, relates solely to voluntary conveyances wholly without consideration, and which may be set aside on proper application, regardless of the intent of either party, and involves no element of notice. It is not seriously argued in this case, and indeed could not be, that the attacked conveyances were voluntary, since it is uncontradictedly proven that there was a consideration for each of them, and ground 2 will be dismissed without further discussion.

In disposing of attack (a) under ground 1, it is necessary to make a brief statement of the facts proven at the trial, including those testified to by defendant, he having been rendered a competent witness in the manner indicated. Regardless of the propriety of such practice, the parties in this case were allowed to prove without objection the reputations and standing of defendant and his father for honesty, uprightness, fair dealing, and other personal and individual characteristics tending to refute the possibility of either of them attempting to perpetrate a fraud of the nature and character alleged in the petition. Some of such characteristics as related to defendant's father, were, that while he was an industrious man as long as he was physically able, yet his natural kindness and inability to refuse requests led him to indiscriminately sign notes for his friends as their surety, and that he incurred heavy and burdensome responsibilities on that account, and which in the latter years of his life greatly depleted the amount of his estate. Without objection it was also established by the same character of proof that the two Gibsons, who were principals in the note, were regarded by every one who knew them up to the time of their bankruptcy as abundantly solvent, so much so as to render the contingent liability by any of their sureties for any reasonable amount of no practical concern. Such latter proof was introduced on the issue of intent on the part of J. J. Pursifull at the time he made the attacked conveyances, and also as bearing on the fact

as to whether he at that time apprehended that he might eventually be called upon to pay plaintiff's debt, or whether he knew at that time that the debt had not been paid, since it had long since matured so as to entitle him to conclude at that time that it had actually been paid. There is not a scintilla of proof in this case that J. J. Pursifull knew at the time of the conveyances, or from thence until his death, that plaintiff's note had not been paid, nor is there any proof to show that defendant, his son, even knew of the existence of plaintiff's debt. With the proof in that condition, we will now briefly examine the testimony relating to the consideration for the attacked conveyances.

Some several years prior to the conveyances, defendant, his father, and a number of other individuals, acquired, and put into a sort of pool, a tract of land in Knox county containing 1,232 acres. They later leased a part of it to some two or more coal operators. After a time they negotiated a sale of that property together with the holdings of their lessees, to a man by the name of Ennis for the consideration of $130,000, but he paid only $90,000 of it and then failed. There was left in his hands 671 acres of that tract, which he conveyed to J. J. Pursifull as trustee for the several owners, and it was afterwards conveyed to a corporation organized by the owners, they taking stock in proportion to the amount of land each had contributed to the original larger tract. At the date of the attacked conveyances, the value of the stock in that company held by defendant's father did not exceed $1,000, although it was nominally much larger. The $90,000 paid by Ennis was distributed by J. J. Pursifull to the various persons entitled thereto, but he did not pay to defendant his share amounting to some $13,000. On the contrary, after paying some of his debts with his share, the father took his son's share and purchased some land in Madison county, taking the deed to himself. The son already owned another tract of land in that county and had joined the Burley Tobacco Pool, then at its height, and he consented for his father to take the deed to the other tract temporarily in his name, so that it would not be in the pool. In the meantime the father collected money due his son, the defendant, from the proceeds of the other Madison county farm, and when the son sold his farm in that county, known in this record as

the "Dozier tract," the father collected a part of the consideration therefor from the purchaser, so that there was due from the father to the son from the transaction mentioned, something in the neighborhood of $18,000 or $20,000 at the time of the attacked conveyances.

Furthermore, the son had paid for his father a number of notes and some judgments, and agreed to and did later pay a number of others, all amounting to something near $7,000. Such facts are established by the uncontradicted testimony of the son and largely corroborated by checks, judgments, and other documentary evidence, together with the oral testimony of other witnesses, one of whom was the Hon. Thomas D. Tinsley, former commissioner of this court, who drafted the attacked deeds, and who testified without objection as to conversations he had, both at that time and on a prior occasion, with defendant's father, relating to some of the most relevant and material facts in this case, and which strongly supports appellee's defense. It was also established without contradiction that defendant obtained considerable property from a deceased aunt, a Mrs. Bingham, some of which was valuable real estate in Knox county, and, perhaps, a part of which was embraced in one of the attacked conveyances. Also, that he inherited from his mother the place upon which he now lives and upon which his father and mother resided before their deaths, and in which the father had a courtesy interest, and for which reason he conveyed that tract to his son, the defendant, and it is one of the attacked conveyances. We have not gone into the details of the evidence given by each witness, and followed the testimony through its various courses, but we have given the substances of it, and it may be said at the outset that plaintiff's proof was such as to cast the burden on defendant to show the bona fides of the attacked transactions. But the cases, supra, do not hold that, when that stage of the investigation is reached, plaintiff ipso facto becomes entitled to the relief he sought, since they also hold that, if defendant meets the burden so cast upon him in a way and manner to dispel the charges of fraud, then plaintiff's right to relief is destroyed.

Turning now to a consideration of attack (b) of ground 1, relied on in the petition, the testimony, consisting in part of that furnished by defendant, with the

proven corroborating circumstances, shows that defendant's father at the time of his death possessed a very limited amount of property, amounting to some three or four hundred dollars and not even enough to defray the expenses of his burial, and physicians' bills, but all of which were paid by defendant to an amount exceeding $1,100.

It may be conceded that some portions of the testimony bearing upon both grounds 1 and 2 are not so clear and convincing as to be entirely free from doubt, but we have the judgment of the chancellor thereon, and the rule is, that if this court entertains no more than a doubt the judgment of the trial court should not be disturbed. It is only when we are convinced by the testimony in the record that the chancellor was in error in his findings of fact that we are authorized to overturn the judgment appealed from. This case, like all others, is to be determined by its peculiar facts, since it is rare that the facts in one case are an exact duplicate of those in another one. Different and additional circumstances are met with in each case, and are usually of such a nature as to be determinative in their effect. In this case (though perhaps proven by incompetent testimony, but without objection) J. J. Pursifull had every reason to believe that his liability on the note sued on was only nominal, and he likewise had reason to believe that it had long since been paid. Defendant, according to the proof, possessed no knowledge whatever of the existence of the note. The reputations and upright and honorable standing of father and son are overwhelmingly shown. Judgments and other writings, including checks and some bank dealings, corroborate the defendant in his testimony, and the trial court, as we have said, construed the proof as sufficient to overcome the burden cast upon defendant, and in no aspect of the case can it be said that the correctness of his judgment is anything more than doubtful, if indeed it is entitled to that criticism.

We, therefore, are constrained to the conclusion that the record furnishes no ground authorizing us to disturb it, and it is affirmed.