# Kentucky-Tennessee Light & Power Co. v. Moats.

May 19, 1942.

Rodes & Willock for appellant.

Marshall Funk for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing in part and affirming in part.

The appellee, Fred M. Moats, was an employee of appellant, a corporation, from September, 1922 to April, 1939. His duties consisted of that of gas service man and gas distribution foreman. In October, 1940, appellee brought this action against the appellant, defendant below, to recover of it a certain portion of his wages which he averred defendant deducted from the total amount of his wages earned and paid him in certain stocks and securities instead of lawful money as provided in Section 244 of the Constitution of Kentucky, which reads:

> "All wage-earners in this state employed in factories, mines, workshops or by corporations shall be paid for their labor in lawful money. *  *  *"

In plaintiff's petition and petition as amended he averred that defendant deducted from his wages the total sum of $2,183.54, subject to a credit, however, of $1,028.16 for which he had sold a certain part of the bonds and securities received by him in lieu of lawful money, leaving a balance of $1,155.38, which sum he prayed to recover of defendant. Plaintiff further averred that he accepted bonds and securities for his wages in lieu of lawful money as a direct and proximate result of threats, coercion and duress used by defendant, in that defendant threatened to discharge him unless he accepted such bonds in lieu of lawful money for his labor, and that the bonds had become worthless.

The defendant moved the court to require plaintiff to elect which cause of action he would rely on and prosecute; that is, whether upon any statute of the state of Kentucky or contract, or upon tort or wrongdoing; that is, coercion, threats and duress. The court overruled the motion since it appeared that plaintiff's action was based upon Section 244 of the Constitution to require defendant to pay him for his wages in lawful money. Defendant then demurred specially to the petition because of defect of parties and pleaded that the Associated Gas and Electric Company, a corporation of the state of Delaware or New York, and the Utilities Employment Securities Company, a corporation, but not of the state of Kentucky, are necessary parties to the action; that the securities, bonds and stocks referred to in the petition were issued by the above-named corporation and for which the plaintiff subscribed, purchased and received from said corporations and averred that it, defendant, only acted as the plaintiff's agent in paying for such bonds, stocks, etc., for him at his request and out of wages due him; that defendant issued none of such securities and delivered none to the plaintiff. Without waiving the special demurrer the defendant also filed a general demurrer to the petition and without waiving either demurrer it filed its answer denying certain material allegations of the petition and pleaded affirmatively that in 1927, 1929 and 1932 and thereafter plaintiff was working for the defendant for wages which were paid semi-monthly in cash and in consideration of the services performed by the plaintiff. It denied that it at any time while plaintiff was in its employ deducted from his salary or wages any sum of money and gave the plaintiff in lieu thereof any bonds, stocks or securities,

and denied that plaintiff accepted such bonds and certificates under force or duress or any threats or coercion used by defendant, or that defendant used any threats, coercion or duress or did so by its authorized agents or servants acting within their authority, or that it, through its agents or otherwise, threatened to discharge plaintiff unless he accepted the alleged bonds, etc., in lieu of lawful money.

Defendant filed its amended answer stating that in 1927 and again in 1929 plaintiff voluntarily subscribed for Class A stock referred to in its petition and at the same time authorized and directed the defendant to deduct sums from his installments on wages payable semi-monthly upon the purchase price of said Class A stock so subscribed for by him and to continue to do so until the stock was fully paid for, which the defendant did and continued to do until the stock was fully paid for, and thereby defendant paid to the plaintiff his wages in full in cash, either directly to him or to said Associated Gas and Electric Company at his request and by his order.

Defendant further pleaded laches on the part of plaintiff, in that he received and accepted the Class A stock in the year 1931 and held same continuously until this action was brought without tendering the same back to the defendant or demanding the return of any money deducted from his wages and paid to the Associated Gas and Electric Company which issued the stocks. Defendant further averred that plaintiff received and accepted the bonds or debentures known as welfare bonds which were delivered to him in 1932, under a similar subscription and arrangement as he received Class A stock, and authorized defendant to deduct a certain proportion of his wages and pay same to the Utilities Employment Securities Company which issued said welfare bonds and defendant thereby paid in cash for and on behalf of the plaintiff such portion of his wages as was measured by said deductions which were ordered and directed by plaintiff to make; that in 1937, after holding such welfare bonds for several years and receiving and accepting interest thereon, plaintiff sold the same on the market and received and accepted a large sum of money as the proceeds of such sale or sales and never repudiated such subscriptions or tendered back such welfare bonds or demanded the return of the purchase price from the defendant, but on the contrary delayed an unreasonable

length of time and therefore is guilty of laches and is prevented in law and equity from recovering thereon.

Defendant further averred that during all the period or periods referred to in the transactions above, at plaintiff's instance and request and for his use and benefit, defendant was contributing out of its own funds and paying to the Associated Gas and Electric Company and to the Utilities Employment Securities Company one-third as much as were the deductions from plaintiff's salary, which was turned over and paid to the respective companies for the respective securities mentioned; that defendant thus paid with its own funds for the use and benefit of the plaintiff, and the plaintiff delayed for a long number of years without repudiating such transactions or tendering back such securities or demanding back such deductions so made, and as a result of such delay the defendant is now unable to recover any of its own funds so contributed for plaintiff's benefit, and that by reason of these matters plaintiff is now estopped from recovering anything from defendant in this action, and pleaded laches and estoppel against the plaintiff in bar of his action.

By another separate paragraph defendant pleaded that plaintiff's cause of action set out in his petition accrued more than five years before the bringing of this action and pleaded the five year statute of limitations, Section 2515, Kentucky Statutes, in bar of the action.

By reply and other subsequent pleadings the issues joined along the lines indicated in the petition and answer, and at the conclusion of the evidence before a jury the defendant moved the court for a directed verdict in its favor and the plaintiff moved the court for a directed verdict in his favor for the relief sought in the petition. The court instructed the jury peremptorily to find for the defendant as to any claims of the plaintiff based on the deductions from his salary and applied to the purchase of securities prior to October 2, 1935 (thus sustaining defendant's plea of limitations) and submitted the case to the jury as to plaintiff's claim against defendant arising from deductions from plaintiff's salary after October 2, 1935. The jury returned a verdict for the plaintiff in the sum of $297.68 and judgment was entered thereon. Defendant has filed the record with this court together with its motion for an appeal, and plaintiff has moved for a cross-appeal.

The first question to be determined is whether or not the deductions made from plaintiff's wages by defendant and applied to the purchase price of the stock pursuant to the written order at the instance and request of plaintiff was in violation of Section 244 of the Constitution. The subscription for the stock purchased by plaintiff including his orders and directions to defendant to make the deductions from his wages and apply same to the payment of the stock is filed with the record and specifically authorizes defendant to deduct from plaintiff's wages a specified amount and at specified times and apply same to the purchase price of the stock until paid for in full. Plaintiff testified that he was 43 years old, had 13 months of college, could read and write well, and that he understood the documents that he had signed and knew what he was signing "absolutely." Pursuant to this authority and request of plaintiff the defendant deducted from plaintiff's wages the amount so authorized and paid the same to the corporations which sold the stock to plaintiff. The question then arises, did the sums paid to the corporations by defendant for the stock constitute payment in lawful money to the plaintiff in contemplation of Section 244 of the Constitution? In Pond Creek Coal Co. v. Riley Lester & Bros., 171 Ky. 811, 188 S. W. 907, wherein the construction of Section 244 of the Constitution was involved, it is pointed out that the wage earner is entitled to be paid in lawful money and wages earned by him constitute property which he is entitled to deal with as he pleases, including a sale or transfer thereof, and the employer could not abridge such right of the employee. Also, in 39 C. J., Section 341, page 236, speaking of statutes similar to Section 244 of our Constitution and designed for the same purpose, it is said:

"Such an act does not prevent an employee from assigning any portion of his wages as security for a store account that he is running up with a merchant, in the absence of collusion to do what the law has forbidden. And where payment is made in money by an employer at the instance or with the authority of his employee to a third person on behalf of the employee, this is considered equivalent to the payment of money to the employee."

In Shaffer v. Union Mining Company, 55 Md. 74, in discussing a similar question, it was held that a statute requiring wages to be paid in lawful money did not pre-

vent the employee from assigning what was due from the employer by an order of the employee in favor of merchants who had sold him goods, although such orders specified that the amounts due the merchants should be deducted from money due the employee by the corporation for wages.

If Section 244 of our Constitution be construed so as to prevent an employer from paying money to a third person pursuant to an order of the employee or to prevent the employee from assigning his wages, then the well known plan and system in this state and many others whereby corporations deduct certain sums from the wages of their employees and pay the same to the labor unions for the dues of the employee, such sums could be recovered from the employers by employees, notwithstanding the employees consented to and directed the employers to make such use of their wages, and thus render invalid what is known as the "check-off" system now in practice between labor unions and employers. We do not think that Section 244 of the Constitution was intended to prevent an employee from assigning his wages or giving an order to his employer in behalf of a third person. In Patterson v. Miracle et al., 253 Ky. 347, 69 S. W. (2d) 708, it was held that a wage earner may make an equitable assignment of his wages. We do not think Section 244 of the Constitution was intended as a restriction upon the right of an employee to assign his wages to a third person; nor, was it intended to prohibit the employer from paying wages so assigned to such assignee, and when the employer does so it constitutes payment to the employee in money. We conclude, therefore, that the plaintiff has shown no right of recovery under the Constitution.

There remains to be determined the question of whether or not plaintiff purchased the stock and agreed to the plan of payment therefor under duress and coercion as charged in the petition. The plaintiff is the only witness who testified that there was any duress, force or coercion used to induce him to purchase the stock. He testified that his negotiations for the purchase of the stock were with Roland Fitch who was superintendent of defendant, and Maury Cowles who was also a superintendent, assistant superintendent, or other agent of defendant. There is no evidence that Fitch made any threats or resorted to any force or coercion to induce

plaintiff to purchase the stock, but according to the evidence of plaintiff Maury Cowles told him, in substance, that if he continued to work for the company or held his job he would have to purchase the stock, and that it was compulsory. It is insisted for defendant that plaintiff's evidence relating to conversations or transactions with Maury Cowles was incompetent (Subsection 2, Section 606, Civil Code of Practice) because Maury Cowles was dead at the time plaintiff testified. Plaintiff insists that defendant waived the incompetency of plaintiff to testify to conversations or transactions with the deceased Cowles because defendant had previously taken the deposition of plaintiff as if on cross-examination and examined him in reference to his conversations and transactions with Cowles.

Counsel for defendant insists that his examination of plaintiff did not go so far as to open up the question concerning any conversations or transactions with the deceased Cowles but merely ascertained from him the name of the "superintendent" referred to by plaintiff and with whom he talked concerning the transaction, but plaintiff was not asked nor did he state the conversations he had with Cowles. We here copy the pertinent part of plaintiff's testimony given in that deposition:

"Q. Then you knew what you had signed? A. Yes, sir.

"Q. Why did you say you signed it? A. I was forced to sign it in order to continue working.

"Q. Explain what was said and who said it? A. On one particular instance the superintendent asked me if I didn't want to sign; that other employees had been signing for it. I told him no, that I didn't want to sign because I wasn't able to carry any, and he said that everybody had signed for it and he had something like that letter in front of him.

"Q. Something like that subscription? A. Yes, sir. He pushed one over to the side and he said I advise you to sign. I asked him if I had to sign, if it was compulsory, and he said, 'Do you want to work here?' and I said yes, and he said, 'I believe if I were you I would sign.' So I signed.

"Q. What person was that? A. The superintendent.

"Q. You say the superintendent. Who was that? A. I think that happened more than once about the signing for stock. There were two different people, maybe three. I don't recall.

"Q. You made three subscriptions. Does this mean that you talked to a different one each time? A. I don't recall but probably two.

"Q. Two conversations? A. Yes, sir.

"Q. Each one by the local superintendent at that time? A. Yes, sir.

"Q. Name such superintendent, either one of them, or if more than one, give the names. A. Roland Fitch and Maury Cowles. I recall those two.

"Q. Both of those Class A Stock, the first subscription you made in 1927 and 1929? A. I don't think so. The first was the Class A Stock and the second was Employees Welfare Bond.

"Q. Who was it with the Welfare Bond, Roland Fitch or Maury Cowles? .A. Possibly both. I recall talking to Mr. Cowles about the second one.

"Q. What do you mean the second one? A. When I signed for the Welfare Bond.

"Q. Do you recall any body else you talked with about those bonds except Maury Cowles? A. Yes, sir. It was discussed between the employees, different employees at that time, about buying them. There was quite a discussion."

It is to be noticed that the witness was evasive and indefinite as to whom he talked with about the purchase of the stock or who the superintendent was referred to by him. After much effort on the part of defendant's counsel to ascertain from plaintiff the names of the persons or the superintendent referred to by him he finally said that he talked to Roland Fitch and Maury Cowles. After the deceased Cowles' name was mentioned by the plaintiff counsel then went no further than to ask him which he talked to, Fitch or Cowles, concerning the purchase of certain bonds and if he talked to anyone else except Cowles, but plaintiff was not asked nor did he undertake to state any conversations or transactions with Cowles. The mere statement of plaintiff that he

talked to Cowles concerning the purchase of the bonds without stating what was said did not amount to evidence of coercion or no coercion and shed no light upon that issue. In order to waive the incompetency of plaintiff the evidence elicited from him on cross-examination should have been such as would have shed some light upon the issue, but since it gave the court or jury trying the case no information on the issue involved we do not think it amounted to a waiver of the incompetency of the plaintiff to testify to conversations and transactions with the deceased.

In Gibson et al. v. Crawford, 259 Ky. 708, 83 S. W. (2d) 1, 6, the witness was asked if she had a conversation with the testator and she answered ''Yes,'' and then stated the conversation in detail. It was held that the question was competent but that all of her answer except the word ''Yes'' should have been stricken if the opposite party had made such motion. The court said: ''The question did not call for the detail of the conversation, and when she went into that the defendants should have moved to strike or exclude all of her answer except the word, 'Yes,' and, not having done so, cannot complain. The question was not objectionable, but the answer was,'' meaning evidently that all the answer except the word ''Yes'' was objectionable. Plaintiff relies upon the cases of McCoy et al. v. Ferguson et al., 249 Ky. 334, 60 S. W. (2d) 931, 90 A. L. R. 891, and Coy v. Pursifull, 249 Ky. 57, 60 S. W. (2d) 93. The opinions in those cases do not state or disclose the extent of the examination of the witness taken on cross-examination. It is only said that the incompetency of the witness was waived by the adverse party by introducing the witness and first examining him upon the issues involved. We presume that the evidence elicited from the witness on cross-examination in those cases was such as to warrant the conclusions reached. The facts disclosed in those cases furnish no authority for plaintiff's position in the present case.

The conclusions we have reached above are conclusive of plaintiff's motion for a cross-appeal based upon the trial court's ruling that the five-year statute of limitations was applicable to plaintiff's claim. Since, however, the case may be retried it becomes necessary to dispose of that question. Since Section 244 of the Constitution has no application to this action it results that plaintiff's cause of action, if any he has, is for debt or a

money judgment against the defendant for wages earned and unpaid. Very clearly the five-year statute of limitations, Section 2515, Kentucky Statutes, is applicable and the trial court did not err in so holding.

For reasons stated, the motion for appeal is sustained and the appeal granted and the judgment is reversed on the appeal and affirmed on the cross-appeal, all of which is remanded for proceedings consistent with this opinion.