### Fresh v. Dunakin.

November 25, 1947.

W. B. Ardery, Judge.

88

Fred Lisanby for appellant.
Funk, Chancellor & Darnell for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

Appellee's mother, Eliza Dunakin, worked as housekeeper for appellant and his father at their home in Scott County from the Fall of 1915 until July, 1917, when she and appellant intermarried. She inherited approximately $7625 from her parents, some of which was received by her before her marriage and some thereafter. On the twenty-second day of January, 1921, she borrowed $3,000 from the Georgetown National Bank, of Georgetown. At that time her husband was insolvent. She secured the loan by a mortgage on her interest in two tracts of land situate in Fayette County. On the twenty-third day of February, 1921, appellant executed a chattel mortgage to Mrs. Fresh, wherein he acknowledged receipt from her of the sum of $3,000 in cash and promised to repay that sum, together with six per centum interest thereon, one year from the date of the instrument. Mrs. Fresh died in February, 1936; no administrator ever was appointed for her estate. Neither before nor after her death was any payment made by Mr. Fresh on the debt referred to in the chattel mortgage.

Appellee, a veteran of World War I, presented himself to the Veterans Administration for treatment in the early part of 1920. We gather from the record that he spent a considerable portion of the next fifteen years as a patient in veteran hospitals; and he entered the Veterans Administration Hospital at Fort Lyon, Colorado, on the ninth day of June, 1935, as a mental patient. A report from the hospital dated August 1, 1935, discloses that he was suffering with a severe case of dementia praecox, and that he was psychotic and incompetent. On December 26, 1935, a further examination was made, which disclosed:

"The patient is psychotic and incompetent. Guardian should be appointed and he should be committed."

On June 9, 1936, appellee was adjudged incompetent by an order of the County Court of Bent County, Colorado. He remained in the hospital at Fort Lyon until August 24, 1939, when he was transferred for further treatment to the Veterans Administration Facility at Wadsworth, Kansas. A report of an examination made on August 24, 1939, disclosed that he was still suffering with dementia praecox, but was improved, and:

"Patient is considered to be incompetent with a complete social and industrial incapacity for adjustment on the outside, but it is believed he will be able to make a good adjustment in a domiciliary facility."

He remained under this disability until the twelfth day of June, 1944, when the Court entered an order declaring him to be sane and competent.

In December, 1944, appellee filed this action in the Scott Circuit Court, wherein he alleged the above facts, and further that appellant fraudulently secured and retained the whole of Mrs. Fresh's estate, including the chose in action evidenced by the chattel mortgage. He prayed that the Court adjudge him to be entitled to one-half of the debt of $3,000 by reason of a constructive trust created by operation of law, growing out of the wrongful and fraudulent conversion by appellant of his wife's estate. Appellant answered and denied the allegations of the petition, pleaded the five and fifteen year Statutes of Limitations in bar of the

original debt, and pleaded that he was the owner of the entire estate by reason of an ante-nuptial contract between him and his wife. He further pleaded that he at no time received $3,000, or any other substantial sum of money, from his wife, and that the chattel mortgage was executed and delivered to her by him "in order to protect themselves in the event of foreclosure" by his creditors. On trial of the case the Chancellor adjudged appellee to be entitled to the relief sought.

As grounds for reversal, appellant contends that the Court erred (1) in failing to sustain his pleas of limitations; (2) in failing to adjudge him to be entitled to all of the assets of his deceased wife's estate, because his testimony in respect to the existence of the ante-nuptial contract was uncontradicted; and (3) appellee failed to establish a constructive trust. We will discuss these contentions in the order named.

A party to an action may not rely on the Statute of Limitations in bar of his adversary's right to recover unless he specifically pleads the Statute. Reams v. Laurel County, 289 Ky. 744, 160 S. W. 2d 176. The plea in this case is in the following words:

"For further answer herein the defendant states that any cause of action that plaintiff has, if any, *growing out of the facts relative to the chattel mortgage* mentioned in his petition, has long since been barred by the Statute of Limitations, namely the five year Statute of Limitations, *upon February 23, 1927;* that if the defendant is mistaken in this, then said cause of action is barred by the fifteen year Statute of Limitation." (Emphases are ours.)

It is manifest that both pleas of limitation are directed to a cause of action which was not stated in plaintiff's petition, viz., an action upon the original chattel mortgage. The cause of action stated in the petition and the relief prayed for and adjudged was the right to recover the proceeds of a constructive trust which was not created until the death of Mrs. Fresh in February, 1936. At the time of Mrs. Fresh's death the fifteen year Statute of Limitations had not tolled the debt; it therefore was owing to the estate, and was subject to conversion into the corpus of a constructive trust, if the evidence was sufficient to establish that

such a trust was created. The five year Statute was not applicable, because the chattel mortgage was not placed on the footing of a bill of exchange. It is manifest that the Court did not err in refusing to sustain the pleas of limitations.

In response to questioning under cross-examination appellant testified that at the time of his marriage he and his wife entered into an ante-nuptial contract, by the terms of which he was to receive all of her estate which she theretofore had received by inheritance, and all that she thereafter was entitled to receive. It is true that no witness testified to the contrary, and we are of the opinion that this testimony was rendered competent, since it was given in response to questions under cross-examination. Coy v. Pursifull, 249 Ky. 57, 60 S. W. 2d 93. However, although no witness testified to the contrary, the conduct of appellant in the first few years of his married life furnishes plenty of evidence to the contrary, and sufficient evidence for the Chancellor to conclude that there was no ante-nuptial contract. Four years after their marriage Mrs. Fresh was part owner of certain real estate in Fayette County, and executed a mortgage on this property to secure her individual debt to the Georgetown National Bank. Appellant admitted that throughout his married life he obtained trivial sums of money from the individual estate of his wife. If, as contended by appellee, appellant borrowed $3,000 from his wife, evidenced by the chattel mortgage, his execution of that instrument belies his contention that his wife's estate passed to him under an ante-nuptial contract; and the fact that she had borrowed the exact amount indicated in the chattel mortgage from a bank approximately one month previous to the execution of the chattel mortgage is strong evidence that Mrs. Fresh loaned the money to her husband, especially since appellant does not satisfactorily explain any other disposition made of the $3,000 obtained from the bank. All of these circumstances properly were considered as proof that no ante-nuptial contract was entered into between Mr. and Mrs. Fresh; and since we entertain no doubt as to the correctness of the Chancellor's conclusion in this respect, we are not disposed to disturb his finding. Cook et al. v. Hagan et al., 301 Ky. 346, 192 S. W. 2d 97.

Appellant's contention that appellee failed to establish the existence of a constructive trust is based upon the theory that a constructive trust must result from an act of fraud, or, in the absence of fraud, must grow out of a fiduciary relationship. Many cases are cited in support of this contention. Appellant's statement of the rule substantially is correct, but is not sufficiently elaborate for our consideration of it in the light of the facts presented by this record. The rule perhaps is best stated in Moore et. al. v. Terry et al., 293 Ky. 727, 170 S. W. 2d 29, 32, wherein, after citing authorities, the Court said:

"These texts and authorities state the rule to be that a constructive trust is created by equity regardless of any actual or presumed intention of the parties to create a trust where the legal title to property is obtained through fraud, misrepresentation, concealment, undue influence or taking advantage of one's weakness or necessities, or through similar means or circumstances rendering it unconscionable for the holder of the legal title to retain the property."

The evidence shows that at the time of the death of his mother appellee was of unsound mind. The law imputed to appellant the knowledge that this insane person was entitled to one-half of his deceased mother's personal estate. Either in the year 1936 or 1939 (the date is not material) a representative of the Veterans Administration made inquiry on appellee's behalf concerning what estate, if any, Mrs. Fresh possessed at the time of her decease. Appellant admitted that he informed this representative that his wife had left no estate. In the meantime he had made no endeavor to locate appellee to disclose to him the true facts of the situation; thus appellant not only took advantage of the weakness of appellee at the time of the investigation by the Veterans Administration, but he at all times concealed, or attempted to conceal, the existence of the debt. Thus, under the rule pronounced in Moore v. Terry, supra, and cases therein cited, a constructive trust was created by equity, because appellant converted the debt he owed his wife's estate to his own use through concealment and through means and circumstances rendering it unconscionable for him to annul the chose in action.

In support of appellant's third contention he likewise argues, as he testified, that he did not receive the $3,000 referred to in the chattel mortgage, or any other substantial amount of money from his wife at any time during their married life. But the circumstances proved, and which we have related, were more than sufficient for the Chancellor to conclude that the loan was made, and that no part of it ever was paid.

The judgment is affirmed.