**Sarah Furgerson STURGELL et al.,
Appellants,**

**v.**

**Lizzie TAYLOR, Widow, et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 16, 1956.

E. D. Stephenson, Pikeville, for appellants.

J. Ervin Sanders, Wine & Venters, John Paul Runyon, Pikeville, for appellees.

CLAY, Commissioner.

The question involved in this suit is the title to an 86-foot strip of land on U. S. Highway 119 in Pike County. The case was tried without a jury, and on motion for judgment at the close of appellant plaintiffs' evidence, judgment was entered for appellee defendants.

The narrow issue is whether or not the tract in controversy was a part of a larger tract, lying immediately to the west thereof, conveyed by plaintiffs' predecessor in title to John Taylor in 1935. The location of the true western boundary of the John Taylor land is the determining factor in the case.

The 1935 deed to John Taylor described the property as "beginning at an iron pin at the intersection of the *James A. Tracy line* * * *." (Our emphasis.) No one positively identified this Tracy line. However, one of the plaintiffs testified that John Taylor (who was dead at the time of trial) and the original grantor had agreed upon the beginning point (which the witness designated on a map); and when asked if that point was on the James A. Tracy line, he testified, "Well it is supposed to be" and "As far as I know that is".

■ Defendants contend that plaintiffs' testimony regarding the agreed location of the line was incompetent because it involved a transaction with a deceased person. An objection was sustained to such testimony on direct examination of the witness. However, on cross-examination, the defendants elicited the evidence to which they now object. Under such circumstances the original objection to the testimony was waived and the testimony was rendered admissible. Coy v. Pursifull, 249

Ky. 57, 59, 60 S.W.2d 93; Martin v. Martin, 286 Ky. 408, 150 S.W.2d 696; Fresh v. Dunakin, 306 Ky. 87, 206 S.W.2d 203; Ables v. Ackley, 126 Mo.App. 84, 103 S.W. 974; Stankey v. Palmer, 6 Cal.App.2d 215, 44 P.2d 382.

■ In addition to the above evidence, there were two other items tending to prove plaintiffs' contention with respect to the western boundary of the Taylor tract. It was shown that about a year after the deed was made to Taylor, a parcel of land lying immediately to the east of his property (and included in the land in controversy) was leased to him. The western boundary of this leasehold began "at John W. Taylor line at his home place 8 feet from his house * * *", and appears to be the same as the western boundary of the tract in controversy. If the western boundary of this lease was further to the east as defendants claim, then John Taylor was leasing from his own grantor part of the same property conveyed to him a year before. This would be most unusual. At least we have probative evidence that Taylor did not claim the property in controversy under his deed.

About a year after the lease was executed, the eastern portion of the original tract owned by plaintiffs' predecessor in title was conveyed to one Cline. His deed describes the western boundary of his property as "beginning at the line of John Taylor", but Mr. Cline testified that he understood his western boundary to be the eastern boundary of the property *leased* to John Taylor and not the property sold to him in 1935. Therefore, Cline does not claim the property in controversy, so we still have the question as to whether or not it was originally conveyed to John Taylor.

■ There was some evidence favoring defendants' position in this controversy. It was shown that the western boundary of the Taylor tract as claimed by plaintiffs would actually include one whole lot and a

part of another lot in a Pikeville subdivision laid out prior to the 1935 deed. There was also testimony by a surveyor that he did not think the western boundary of the Taylor tract as claimed by plaintiffs was the proper one. His testimony, however, seems to be based upon the fact that this boundary overlapped the subdivision lots.

The proof with respect to these subdivision lots did not justify a finding for defendants. It did no more than tend to prove that plaintiffs' predecessor in title was attempting to convey property not owned by him. This fact does not militate against plaintiffs' claim with respect to the location of the western boundary line fixed in the Taylor deed. A different situation might be presented if there had been proof that the easternmost subdivision lot (lot No. 21) had been owned by John A. Tracy, as this would tend to establish the Tracy line, but there was no such evidence. We do not think the possible inferences favoring defendants' contentions overcame the prima facie case made by the plaintiffs.

The defendants' motion for judgment at the close of the plaintiffs' case may be and should be treated as a motion to dismiss under CR 41.02. The question then presented to the trial court was whether or not upon the facts and the law the plaintiffs had shown a right to relief. In determining this question in a non-jury case, it is proper for the court to weigh and evaluate the evidence. See Bach v. Friden Calculating Machine Co., 6 Cir., 148 F.2d 407; Allred v. Sasser, 7 Cir., 170 F.2d 233; United States v. Borden Co., D.C., 111 F.Supp. 562. We are of the opinion that the plaintiffs' proof, in the absence of any evidence introduced by defendants, was sufficient to establish their ownership of land lying between the Taylor and the Cline tracts, and the court's contrary finding at this stage of the proceedings was clearly erroneous. Defendants' motion for judgment (or dismissal) should have been overruled and defendants' proof should

have been heard. On the whole case we believe a retrial of the action would best serve the interests of justice.

The judgment is reversed with directions to grant a new trial.