Graham, &c., v. King, &c.

96  339<br>100  645

[This case was not reported with other cases decided at September term, 1893, because it was then pending upon petition for rehearing.]

CASE 52—PETITION EQUITY—DECEMBER 12, 1893.

# Graham, &c., v. King, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

CONSTRUCTIVE TRUSTS.—Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations or concealments, or through any other similar means which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein.

Where a mother intrusted money to her daughter's husband to invest for her in real estate, and he, without her consent, and in fraud of her rights, had the title to the property purchased taken to his wife, the chancellor should, upon the mother's petition, have adjudged the property to be hers. The trust under which the daughter holds the title is not a resulting trust, which is now inhibited by the statute, but is a constructive trust.

KOHN, BAIRD & SPECKERT FOR APPELLANTS.

1. A husband is never a competent witness for the wife where she has testified. (Greanleaf on Evidence, vol. 1, secs. 340 and 341; Civil Code, secs. 605 and 606; Booth v. VanArsdale, 9 Bush, 719; Wise v. Foot, 81 Ky., 13; Howard v. Tenny, 87 Ky., 52; Covington v. Gaylor, 14 Ky. Law Rep., 146; Tabor v. Hardin, 9 Ky. Law Rep.,

Graham, &c., v. King, &c.

491; Schouler on Domestic Relations, sec. 53; Commonwealth v. Sapp, 12 Ky. Law Rep., 484.)

2. Where confidential relations exist, and the person possessing the confidence of the other receives a benefit from him, the burden rests upon the person thus benefited to show that it is fair and free of imposition and fraud. (Biglow on Fraud, vol. 1, p. 261.)

3. The .trust herein is not a resulting trust barred by the statute, but a constructive trust arising out of fraud. (Gen. Statutes, chap. 63, art. 1, sec. 19; Pomeroy's Equity Jurisprudence, vol. 2, secs. 1030, 1042, 1044, 1053 and 1055; Martin v. Martin, 16 B. Monroe, 8; Martin v. Martin, 5 Bush, 48; Miller v. Edwards, 7 Bush, 394.)

4. As to pleading fraud. (Vance v. Stone, 80 Ky., 79.)

5. A married woman coming into the State temporarily without her husband can not make a gift of her general estate without the consent of her husband, to those cognizant of the fact. (Tinsley v. Roll, 2 Met., 510; Kelley on Contracts of Married Women, p. 61; Turpin v. Thompson, 2 Met., 420; Jones v. Warren, 4 Dana, 334; Williamson v. Yager, 13 Ky., Law Rep., 274; Gregory v. Paul, 15 Mass., 31; Abbott v. Bailey, 6 Pick., 689; Rosenthal v. Mayhew, 38 Ohio State, 155; Bean v. Morgan, 4 McChord, 148; Gregory v. Pierce, 4 Met. (Mass.), 474; Maysville & Lexington Ry. v. Herrick, 13 Bush, 125.)

BARNETT, MILLER & BARNETT FOR APPELLEE EDWARD F. KING.

1. The appellants charged King and wife with fraud, and made them co-defendants. In order to repel that charge each defendant had the right to testify *for himself*. Section 606 of the Code only prohibits the one from testifying "*for the other.*" Under section 605 he may testify for *himself*. (9 Am. & Eng. Enc. of Law, p. 809; Albough v. James, 29 Ind., 398; Crane v. Buchanan, 29 Ind., 573; Clouse v. Elliott, 71 Ind., 302; Duval v. Davey, 32 Ohio St., 604; Kaine v. Trustees, &c., 49 Wis., 371; Marsh v. Potter and wife, 30 Barb., 506; Klink v. Knoble and wife, 37 Ark. (1881), 298.)

2. Appellants must bring themselves within sec. 19, art. 1 of chap. 63, General Statutes, both by averment and by proof in support thereof, in order to maintain this action. The statute controls; there is no "higher law." (Graves v. Graves, 3 Met., 169; Broaddus v. Broaddus, 10 Bush, 299)

3. There must be an *express* promise to reconvey; the law raises no such implied promise. The *dictum* of Judge Williams in Martin v. Martin, 5 Bush, 41, has been expressly overruled, *eo nomine*, in Mannen v. Bradberry, 81 Ky., 167.

4. Upon the issue of fact, the chancellor found there was neither fraud nor mistake; upon appeal that finding of fact will not be disturbed. (Judge v. Braswell, 13 Bush, 67; Williams v. Rogers, 14 Bush, 781;

Graham, &c., v. King, &c.

Moore v. Estes, 79 Ky., 283; Davidson v. Morrison, 86 Ky., 397; Hinds v. Boston, 10 Ky. Law Rep., 765; Cox v Reid, 10 Ky. Law Rep., 565; Deshazer v. Deshazer, 11 Ky. Law Rep., 159; Fuqua v. Fuqua, 13 Ky. Law Rep., 130; Campbell v. Cin. Southern R. Co., 9 Ky. Law Rep., 800.)

5. The petition is based upon a supposed mistake in the making of the deed; all the proof is aimed towards showing a promise to reconvey —an issue entirely foreign to the pleadings. The *allegata* and the *probata* must agree. (Rubber Co. v. Goodyear, 9 Wall., 793; Boone v. Chiles, 10 Peters, 209; Harrison v. Nixon, 9 Peters, 503; Tripp v. Vincent, 3 Barb. Ch'y, 613; Carroll v. Collins, 2 Bibb, 429; Burgess v. Tipton, 5 Dana, 541; Kearney v. Carrington, 1 Met., 339; Gossom v. Badgett, 6 Bush, 101; Robinson v. Major, Lit. Sel. Cases, 507; Newman's Pleading, 723; Meadows v. Goff, 90 Ky., 542.)

6. The question of Mrs. Graham s coverture can not affect this case. She came into Kentucky from Alabama without her husband, and he was not here when the money was advanced for Mrs. King. Mrs Graham had absolute dominion over her property, and could give it away or sue for it as an unmarried woman. (Gen. Statutes, chap. 52, art. 2, sec. 10.

7. There will be no reversal for error in admitting evidence which could not have altered the result. As the Chancellor properly based his judgment upon the admitted facts as stated by Mrs. Graham, that the deed was taken as it was with her consent, the evidence of Mr. King, if rejected, could not have altered the result. (Andrews v. Hayden's Adm'r, 88 Ky., 460; Le Compte v. Pitcher, 11 Ky. Law Rep., 362; Miles v. Brown, 11 Ky. Law Rep., 368.)

JAMES P. GREGORY FOR APPELLEE BIRDIE H. KING.

1. Findings of fact by lower court will not be disturbed unless palpably against the weight of evidence. (Judge v. Braswell, 13 Bush, 67; Russell v. M. H. C. & C. T. P. R. Co., *Ibid*, 308; Commonwealth v. Williams, 14 Bush, 297; Varble v. Bigley, Ibid, 698; Williams v. Rogers, *Ibid*., 776; Helm v. Coffey, 80 Ky., 176; Bagley v. Lewis, 2 Monroe, 77; Becker v. Cron, 7 Bush, 205.)

2. This court will not reverse on account of the improper admission of testimony, when the result must have been the same in any event. (Dickerson v. Wilson, 2 J. J. M., 498; Kennedy v. Conn, 3 B. M, 322; Hanley v. Blackford, 1 Dana, 4; Curd v. Lewis, *Ibid*., 352; Kercheval v. Ambler, 4 Dana, 168.)

3 Nor for error not prejudical to substantial rights of appellant. (King v. Mims, 7 Dana, 267; Hick v Stull, 11 B. M., 54; Young v. Chandler, 13 B. M., 254; Roots v. Merriwether, 8 Bush, 400; Williams v. Rogers, 14 Bush, 776.)

4. Both husband and wife may testify in his or her own behalf in actions to which both are parties. (Civil Code of Ky., secs. 605, 606; Starkie

Graham, &c., v. King, &c.

on Evidence, p. 139; Albough v. James, 29 Ind., 398; Lowe v. Hughes, *Ibid.*, 399; Crane v. Buchanan, *Ibid.*, 9570; Am. & Eng. Enc. of Law, p. 809; Hawver v. Hawver, 78 Ill., 412; Clause v. Elliott, 71 Ind., 302.)

5. The question of Mrs. Graham's coverture can not affect this case because—

(*a*) She came into Kentucky without her husband, who was not here when the money was given to Mrs. King. (Gen. Stats., chap. 52, sec. 10, art. 2.)

(*b*) She says it was her separate estate..

(*c*) She (not her husband) now seeks to recover the money or property.

(*d*) No question of her power to do what she did is raised by the pleadings; on the contrary, she puts her suit upon an entirely different ground.

6. The petition and Mrs. Graham's testimony both show that this action is brought to establish a resulting trust under the first exception contained in sec. 19, art. 1, of chap. 63 of the General Statutes. (Broaddus v. Broaddus, 10 Bush, 299.)

7. The admitted facts show that she can not recover under the first exception because—

(*a*) The deed was taken in *Mrs. King's* name, with her mother's *consent* and *direction.*

(*b*) The deed *was not taken* by the grantee, Mrs. King, but by her husband.

8. There can be no recovery here under the second exception of the statute, because—

(*a*) There must be an express promise to reconvey by Mrs. King. (Mannen v. Bradberry, 81 Ky., 157.)

(*b*) There is no such promise, or any kind of a promise alleged in the petition.

(*c*) The *allegata* and the *probata* must agree. (Rubber Co. v. Goodyear, 9 Wall, 793; Boone v. Chiles, 10 Peters, 209; Harrison v. Nixon, 9 Peters, 503; Tripp v. Vincent, 3 Barb. Ch'y, 613; Carroll v. Collins, 2 Bibb, 429; Burgess v. Tipton, 5 Dana, 541; Kearney v. Carrington, 1 Met., 339; Green v. Bodgett, 6 Bush, 101; Robinson v. Major, Lit. Sel. Cases, 407; Newman's Pleading, 723; Meadows v. Goff, 90 Ky., 542.)

4. The only presumption that can be raised from the deed in this case is that the mother, Mrs. Graham, "designed to make provision for her child," Mrs. King. (2 Minor's Institutes, 192; Lewin on Trusts, p. 144; Perry on Trusts, sec. 143; Hill on Trusts, sec. 97; Thomas v. Chicago, 55 Ill., 103; Fleming v. Donahue, 5 Ohio, 255; Shaw v. Reid, 47 Pa. St., 96; Kelly v. Karson, 77 Ala, 106.)

5. It devolves upon the party asking the aid of a court of equity to en-

force a resulting trust, to show by appropriate averments, that it is not within the operation of the general provisions of the statute, but belongs to one or the other of the classes excepted; otherwise the relief can not be granted. No such averments are made in the petition now before us, and the result is that the chancellor very properly denied her a conveyance of the lands. (Graves v. Graves, 3 Met., 169.)

DULANEY & ALEXANDER AND WM. H. HOLT FOR APPELLEES IN PETITION FOR REHEARING.

Cited: Gen. Stats., chap. 52, art. 2, sec. 10; *Idem*, chap. 63, art. 1, sec. 19; 2 Pom. Eq. Jur., secs. 1031-1044; 2 Story's Eq., secs. 1202-3.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellants, Robert A. and M. E. Graham, husband and wife, lived in Mobile, Alabama, until in November, 1890. They had two daughters, Birdie H. and Ella May, the former of whom, in October of that year, married her co-appellee, Edward F. King, whose former home was in Louisville, Kentucky, but who was then living in Mobile. The young people came at once to Louisville and stopped with King's mother. In some ten days, in pursuance of an arrangement to that effect, Mrs. Graham followed with her younger daughter, on a visit, and perhaps to board with her son-in-law and daughter. They rented a house, which the mother furnished. The appellees had no means, but Mrs. Graham brought with her some twenty-two hundred dollars in cash; also some Mobile and Ohio railroad bonds of the value of five thousand dollars, and Alabama State bonds of the value of six thousand dollars.

This was her whole estate, and it had been given her by her father. Her husband was engaged in the sewing machine trade in some way, was at home but little, and was left in Alabama. He appears to have

been substantially without any estate.  Very soon
after coming to Louisville, Mrs. Graham was induced
to invest the larger portion of her means in real estate
in that city, where the prospects were good of mak-
ing a profit by speculation in that market, and of
increasing her income by the rents if the property
were not sold at an advance.  After looking at several
pieces of property, King's judgment being mainly re-
lied on, she selected and bought a vacant lot on the
northeast corner of Floyd and Ormsby Avenue, at
the price of two thousand five hundred and seventy
dollars and fifty cents, and it was decided to build
thereon two houses — a dwelling-house and a store-
house.   King transacted all the business connected
with the purchase of the lot and the erection of the
houses, the total cost being nearly eight thousand
dollars.

The title of the property was taken to the appellee,
Birdie H. King, and this was done, as now contended
by Mrs. Graham, without her consent and in fraud of
her rights.   That not until she began to assert her
right to collect the rents from the store-house, when
completed, and the refusal of the appellees to concede
that right to her, was she apprised of the nature of
the transaction by which more than half of her estate
had been transferred to her daughter by the fraud of
her son-in-law ; that when the lot was bought she was
informed by King that, as her husband was away and
his whereabouts uncertain, he would so fix the title to
it that she could sell and convey it to any purchaser
who might be found, without having to send to Ala-
bama for her husband ; that such delay might lose
the chance of a desirable sale, &c.

The appellees contend that Mrs. Graham made a gift of the property to her daughter, the appellee, and built the improvements thereon as an advancement to her; that she was apprised of how the title was taken, and there was no fraud practiced on her.

The chancellor dismissed the petition of Mrs. Graham and her husband seeking to have the property adjudged to be the wife's, and they have appealed. During the course of the litigation, much bitter feeling has been exhibited between those whose relations are ordinarily supposed to be so close as to preclude the possibility of severance by mere greed of money. We do not deem it necessary to review the testimony at length. Upon a careful examination of it, we are led to the irresistible conclusion that Mrs. Graham has been deceived, imposed on, defrauded, and did not voluntarily deprive herself of the substantial portion of her estate. Manifestly she was misled as to the nature of the arrangement by which the title was placed in her daughter—she was assured that it was her own property, and that she could sell it whenever she pleased. She seemed utterly unable to consider it otherwise, even after the astounding news was broken to her that her son-in-law declined to let her have the rents, and when, upon inquiry and consultation with her attorneys, she learned of the true condition of the title. After the suit was brought, and against her lawyer's advice, she paid the builder, to whom she was not personally bound, the sum of one thousand dollars, as the balance due on the improvements. "He was poor," she said, and had built her houses. She "*knew* they were hers." She is corroborated

in the essential elements of her contention by her daughter, Ella May, and by disinterested witnesses.

The trust under which Mrs. King holds the title is not a resulting trust, now inhibited by the statute, as contended by counsel for appellees, but a constructive trust which may be "invoked," as Mr. Pomeroy puts it, "for the purpose of circumventing fraud," &c. He says: "Constructive trusts include all those instances in which a trust is raised by doctrines of equity for the purpose of' working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title. * * They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership." (Vol. 2, sections 1030–1044.)

He further says: "Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances, which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein." (Section 1053.)

These great and fundamental principles are not affected by any statute. They are as eternal as Truth itself, and are worth remembering, not by jurists alone, but by all who deal with their fellow-man.

The property described belongs to the appellant, M. E. Graham, and the judgment dismissing her petition is reversed that it may be so adjudged.