(No. 13500.—Decree affirmed.)
MARY A. SCHRADER, Defendant in Error, *vs.* LEE R. SCHRADER *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1921.*

1. APPEALS AND ERRORS—*when chancellor's finding of fact will not be disturbed.* A chancellor's finding of fact from conflicting oral testimony will not be disturbed on review unless it is clearly against the preponderance of the evidence.

2. DEEDS—*wife cannot benefit from fiduciary relation between her husband and his mother.* Where a son occupies a confidential relationship towards his mother, the son's wife, who gets the benefit of a deed procured by means of such relationship and who pays no valuable consideration therefor, stands upon no better footing than would her husband had the deed been made to him direct.

3. SAME—*burden is on party obtaining advantage of fiduciary relation to prove that transaction was fair.* Where a fiduciary relation exists the burden is upon the person obtaining the advantage of the transaction to vindicate the bargain or gift from any shadow of suspicion and to show that it was perfectly fair and reasonable in every respect, and courts will scrutinize such transactions with great care.

4. TRUSTS—*when a constructive trust arises.* Where a son obtains a deed for his wife upon a consideration paid by his mother, towards whom he stands in a fiduciary relation, a constructive trust will arise in favor of the mother, where the evidence shows that she was misled into thinking that the deed was to be made to her.

WRIT OF ERROR to the Circuit Court of Lawrence county; the Hon. J. C. EAGLETON, Judge, presiding.

GEE & GEE, for plaintiffs in error.

E. B. GREEN, and THEODORE G. RISLEY, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Mary A. Schrader, defendant in error, filed her bill in the circuit court of Lawrence county against Lee R. Schrader and his wife, Elsie Schrader, to compel the conveyance to her by them of the southwest quarter of the southwest quarter of section 15, town 2, north, range 13, west, in said county. The substance of the charge in her bill is, that she is a widow and was wholly inexperienced in the business of purchasing and procuring the conveyance of real estate; that she was compelled to, and did, rely largely on the aid and advice of her son, Lee, in the purchase and conveyance to her of said land and another forty acres adjoining the same on the north; that her son did take charge of the purchase of the real estate and the procuring of the conveyance to her of the two tracts of land; that she trusted her son and believed that he would act fairly and honestly with her in the purchase of the land; that he, as her agent, did not act faithfully and honestly with her but confederated and conspired with his wife to wrong and defraud her, and without her knowledge or consent and in violation of the trust and confidence placed in him caused and procured G. W. VanGilder and his wife, her vendors, to convey the south forty of the eighty acres of land, containing the buildings and other improvements thereon, to Elsie Schrader and to convey the other forty-acre tract to complainant; that she paid the entire contract price, $4100, to her vendors, and was induced by the fraud of defendants to receive a deed to only one of the tracts, when, in fact, she was, according to her agreement with her son, to receive a conveyance of the entire eighty acres of land. Defendants filed their answer to the bill denying the material allegations thereof, and a general replication was filed to the answer. On the trial the evidence was all heard by the

court in open court. The court found the allegations in the bill to be true and rendered a decree according to the prayer thereof, in favor of complainant. Error is prosecuted for a review of the record.

The facts proved on the trial and not controverted are the following: Defendant in error is a widow who resided in Mt. Carmel, Illinois. She was the mother of nine children and was of the age of sixty-two years at the time of this transaction. She was desirous of purchasing the eighty-acre tract of land aforesaid, which constituted one farm. All the buildings were on the south forty, which is located on a public highway south of the village of Sumner, in Lawrence county. G. W. VanGilder was the owner of this farm. She enlisted the services of her son, Lee, to make the purchase of this land, and also to sell a one-half interest in a farm owned by her and her sister in Allison Prairie, in Lawrence county, which interest she sold by the aid of her son and his father-in-law, Milt Corrie, for the sum of $3154, which was collected and deposited to her credit with the Citizen's Banking Company at Lawrenceville in January, 1917. She also had other money to her credit in said bank. Lee and Corrie also acted as her agents in the purchase from VanGilder of his eighty-acre farm. VanGilder agreed to sell his farm for $3100, subject to a mortgage to Emma VanGilder in the sum of $1000, making a total purchase price of $4100. To close up this purchase and sale she was notified by her son and Corrie to go to Lawrenceville, and she did go there for that purpose on November 7, 1916. She met at the court house, in the circuit clerk's office, for this purpose, Thomas S. Gerhart, a lawyer and notary public brought there by VanGilder to draft the contract and deeds and to act as notary. She also met there VanGilder and his wife, Lizzie, her grantors; Emma VanGilder, the holder of the mortgage on the premises; Corrie and his wife, father and mother of Elsie Schrader; and Lee R. Schrader and his wife, Elsie. Gerhart

prepared the instruments that were drawn up that day between the parties in the main room of the circuit clerk's office, using the typewriter of the circuit clerk for that purpose. The instruments drawn up by him were four in number: a contract for the purchase of the land, which was signed and sealed by G. W. VanGilder, Mary A. Schrader and Elsie Schrader and witnessed by Lee Schrader; a new mortgage for $1000 to Emma VanGilder, to be signed by the purchaser from VanGilder; and two warranty deeds, both signed by VanGilder and his wife, one being to Elsie Schrader for the south forty and described as aforesaid, and the other of the north forty to Mary A. Schrader and described as the northwest quarter of the southwest quarter of section 15, town 2, north, range 13, west, subject to the $1000 mortgage. The contract specifically provided that the two warranty deeds were to be made as they were made,—one conveying the south forty to Elsie Schrader and the other conveying the north forty to Mary A. Schrader. It provided that the consideration was to be $4100,—$400 to be paid in cash, and the remainder ($2700) on or before April 1, 1917, and subject to the $1000 mortgage. It also provided that any and all payments by the purchasers were to be made through Charles F. Breen, president of the bank. The contract was so written to enable defendant in error to collect the amount due her on the sale of the Allison Prairie farm so she could make deferred payments to VanGilder. The deeds were executed by Van-Gilder and his wife and were deposited in escrow in the bank, the deeds to be delivered by Breen, the president, when the purchase money due was delivered to him for VanGilder. The deeds were placed in separate envelopes, one addressed to Mary A. Schrader and the other to Elsie Schrader. The balance of the purchase money was paid by defendant in error through her son, Lee, by checks drawn by her and payable to him, before April 1, 1917, and the two deeds were delivered by Breen to Lee,—one for his

wife and the other for his mother,—in January, 1917, and were recorded by him. Defendant in error received her deed from her son in October, 1917, while she was on a visit with him. She claimed that she never knew of any deed being made to Elsie Schrader for the south (or what is called in this suit the front) forty until after she had received her deed in October, 1917. She filed her bill on June 13, 1918.

The claim made by defendant in error, as disclosed by her testimony, is, that she had agreed with her son, Lee, that if he and his father-in-law, Milt Corrie, would sell her interest in the Allison Prairie farm and purchase for her at a satisfactory price the farm of VanGilder and charge her no commissions she would let Lee live on the latter farm for one year. She further testified that when she met the parties at the court house on November 7, 1916, to conclude the purchase of the VanGilder farm she started to go into the main office of the circuit clerk, where all the instruments were prepared by Gerhart, but that her son stopped her in the front or waiting room of the clerk's office and had her wait there with Elsie Schrader, Mrs. Corrie, and others, telling her, in substance, that the office room of the clerk would be crowded and uncomfortable and that he would look after all the matters of drawing up the contract and deeds; that she protested that it was her matter to be attended to, but she trusted him implicitly and remained in the waiting room while all the instruments were prepared and at no time was in the office while the instruments were discussed and prepared. She positively testified that the contract of purchase was never read to her and that she did not know its contents, and that she never knew that any deed was made except the one delivered to her until after her deed was delivered to her in October, 1917, and that she never saw the deed made to Elsie Schrader until October, 1917. The claim of the plaintiffs in error is just as positive that Lee Schrader and Milt Corrie agreed to sell the Allison Prairie

farm and purchase for defendant in error at a satisfactory price the VanGilder farm and charge her no commissions, in consideration of her agreement that the south (or front) forty was to be deeded to Elsie and Lee for a home and the north (or back) forty to defendant in error. They testified positively to their claim and were corroborated by Corrie. They also testified that they had the contract and deeds prepared exactly as she had agreed, and that she knew that two deeds were made that day, as aforesaid, and also the contract, and that it was read to her and she knew its contents.

Lee R. Schrader denied asking his mother to remain in the waiting room while the instruments were prepared, but she is corroborated in this claim by VanGilder and his wife. All the witnesses agree that she did remain in the waiting room and was not in the office while the instruments were being prepared. Gerhart testified that he read the contract in the office and thinks that defendant in error was present when it was read. The weight of the testimony seems to show clearly that she was not at any time in that room when Gerhart testifies he read it, and the decided weight of the evidence shows that she signed the contract in the waiting room after it was prepared and that it was not there read. All the witnesses agree that she did not see the deed that was made to Elsie Schrader, and that she did not go with VanGilder, Corrie and Lee, who deposited the instruments in escrow, and did not see the exhibits that were addressed and deposited in the bank. The testimony of Gerhart tends to show that Mrs. Schrader and Elsie Schrader signed the contract in the waiting room and that it was read only in the office where it was prepared and out of Mrs. Schrader's presence and hearing.

Mary A. Schrader was contradicted by Corrie and Lee Schrader and his wife as to the agreements that were to be put in writing and as to her actual knowledge of the contents of the written contract, and, in a way, by Gerhart

as to her knowledge of such contents. Plaintiffs in error and Corrie were contradicted in material matters by the VanGilders. There is one very damaging fact in the record testified to by VanGilder and not contradicted at all, to the effect that Corrie at VanGilder's house, in the presence of Lee, asked VanGilder, after an agreement had been reached for the purchase price of $4100, to tell Mrs. Schrader that the purchase price agreed on was $4600; that he told VanGilder if he would do that "they would divide up that part,"—the $500 over the price.

It was the peculiar province of the chancellor, who heard and saw the witnesses testify in open court, to determine the truth of the controversy. It is not our province to reverse the finding of facts by the chancellor under the evidence in this record, even though we might have been inclined to find otherwise, had we been placed in his stead, upon the trial of the suit. A chancellor's findings of fact from conflicting oral testimony will not be disturbed on review unless clearly against the preponderance of the evidence. (*Fabrice* v. *Von der Brelie,* 190 Ill. 460; *Village of St. Anne* v. *Coyer,* 223 id. 96.) A confidential relation existed between Lee Schrader and his mother. His wife, Elsie, was a mere beneficiary of his unfaithful conduct towards his mother and paid no valuable consideration for the deed to her, and she stands upon no better footing than would her husband had the deed been made to him direct. The burden of proof is upon the person obtaining the advantage, where fiduciary relations exist, to vindicate the bargain or gift from any shadow of suspicion and to show that it was perfectly fair and reasonable in every respect, and courts will scrutinize such transactions with great severity. (*Dowie* v. *Driscoll,* 203 Ill. 480.) The general rule in equity is, that "wherever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which necessarily grows out of that confidence is possessed by the other, and this

confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." (Bispham's Eq. sec. 232; *Thomas* v. *Whitney,* 186 Ill. 225; *Graham* v. *King,* 96 Ky. 339.) Under the findings of the chancellor in this case a constructive trust existed in favor of defendant in error.

The decree of the circuit court is affirmed..

*Decree affirmed.*