## Reed et al. v. Reed et al.

(Decided May 13, 1938.)

A. D. HALL for appellants.

D. Y. COLSON for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Parties appellant are John Reed, Squire Reed, and H. W. Hacker, who were plaintiffs below. Appellees are Pleas Reed, and Lillie, his wife, and the children of Pleas Reed by a former marriage, and who were defendants below.

It is alleged in the petition that Mary Bell Reed, former wife of Pleas, died in 1928 leaving as her survivors twelve children, four of whom were under twenty-one years of age; that at the time of the death of Mary Bell she was the owner of a one-half interest in a tract of land, and Pleas Reed, her then husband, the owner of the other one-half undivided interest, and that upon the death of Mary Bell, Pleas Reed took curtesy.

Prior to December 18, 1930, Pleas had married appellee Lillie Reed. They had become indebted to a bank in the sum of $500, and the bank was pressing for payment; in order to save him the embarrassment of selling some live stock to meet payment of the note, the three appellants signed as sureties for him and Lillie on a renewal of the $500 obligation. This note was renewed several times until January 7, 1934, at which time appellants paid the note. When the note was first renewed with appellants as sureties, Pleas and Lillie Reed, in order to indemnify appellants, executed a mortgage on a described tract of land, being the same which it was alleged was owned jointly by Pleas and the former wife. The appellants asked for judgment against the maker of the note and for a sale of Pleas Reed's interest, the proceeds to be applied to their debt. That interest was said to be the "undivided one-half in and to the described boundary of land, and the right of curtesy of Pleas Reed in the other undivided one-half interest owned by Mary B. H. Reed at the time of her death." They asked that Lillie Reed's inchoate

504

right be also subjected, since she had joined in the mortgage.

Upon the filing of the petition an attorney was appointed to represent the infant children, and he filed a report and answer in their behalf. It does not appear that any of the adult children answered. In the answer filed it seems that the execution of the note, with appellants as sureties thereon, and the contemporaneous execution of the mortgage by Pleas and Lillie Reed were admitted. The only issue raised was as to the ownership of any greater interest by Pleas Reed than his curtesy right, hence it is denied that the mortgage conveyed any other or greater interest. In an affirmative plea it is alleged that the boundary of land described in the deed was the inheritance of Mary B. H. Reed, coming to her out of real estate owned by her father at his death. It was then alleged that the name of Pleas Reed was placed in the granting clause of said deed by mistake of the draftsman, because of the fact that he was at the time the husband of Mary Bell Hacker Reed; that the said Pleas Reed paid no part of the consideration for said conveyance, and in fact there was no consideration other than the relationship of the said Mary Bell Hacker Reed, who was a child and heir at law of Martha Hacker Eversole, and the said boundary of land was conveyed to her as her distributable share in the landed estate. It is charged that H. M. Hacker, plaintiff, was one of the grantors in said deed, and was also a grantee in an interpartes deed, when there was conveyed to him another portion of the landed estate of said Martha Hacker Eversole, as his distributable share.

It was further alleged that "by reason of all these facts, whatever title Pleas Reed took under said deed he took in trust for these answering defendants, heirs at law of Mary H. Reed, all of which facts were well-known to plaintiffs at the time they took the mortgage on the boundary of land." It is then alleged that since Pleas Reed is holding out that he was or is the owner of an undivided half interest, a cloud is cast upon their title, and by way of counterclaim it was asked that their title and the title of the other heirs at law of Mary B. H. Reed be quieted. While the answer does not set out the deed referred to therein, it was referred to in the petition, setting out the immediate source of alleged title in Pleas Reed.

In reply, after denying material allegations of the answer, appellants asserted by affirmative pleading that the deed to the boundary of land set out in the petition conveyed to Pleas Reed and Mary B. H. Reed a joint interest therein; was conveyed to them on June 14, 1904, and duly recorded November 2, 1907; that Mary B. H. Reed died July 24, 1928, and had lived in the neighborhood of the boundary of land from the date of the deed to the time of her death, more than twenty-four years after the execution, and more than twenty-one years after the recordation of the deed, without raising any question as to the interest of either herself or her husband therein, or seeking reformation thereof. It was also alleged that the deed was taken, conveying joint interests with full knowledge on the part of Mary B. H. Reed.

With the issues thus formed, some proof was taken, and, after completion thereof, the cause was submitted upon proof, pleadings, and exhibits, the court adjudging that the deed from Martha Eversole and others to Pleas and Mary B. H. Reed, of date June 14, 1904, conveyed no interest to Pleas Reed, except in trust for the use and benefit of the heirs at law of Mary B. H. Reed, and that such was the only interest held in said boundary at the time of the execution of the mortgage sought to be enforced. It was further held that whatever interest Pleas Reed held by curtesy had been forfeited by his attempted conveyance to plaintiffs by way of the mortgage, hence plaintiffs were not entitled to recover on the same as against the defendants, and, in so far as the petition related to them, it was dismissed, with objection and exception, and granting of appeal. The only question discussed in briefs is the one in respect to Pleas Reed's title under the deed of June, 1904.

A recitation of the facts developed in regard to the deed is necessary to a proper conclusion of the controversy. It may be mentioned at the outset that the boundary of land under discussion was not of the landed estate of Martha Hacker Eversole. It came out of lands owned by her husband, Luther Hacker, who, as is shown died more than forty years prior to the time of taking the depositions. At the time of his death, the survivors were his widow, Martha, two sons, J. B. and H. M., and the daughter, Mary Bell. Later Martha Hacker married one Shackleford, and a daughter, Cora, was born of this marriage. Still later Martha mar-

ried Eversole. There were no children of this marriage. After Luther Hacker's death, his three children, all of whom were then under age, agreed among themselves, and with Martha Hacker, to divide the land into four parts, the fourth part to go either to Cora Shackleford, the half-sister, or to her and her mother. This was done and parties took possession of their respective boundaries. Later, and after all the Hacker children became of age, it was agreed among themselves that inter-partes deeds should be made, and this was done on June 15, 1904. While the deed is not exhibited, the record shows that one-fourth of the original boundary was deeded to Martha Eversole and the half-sister, or to the latter.

When it came time to execute the deeds, Pleas Reed held out, and, as the proof showed, demanded that some 10 or 15 acres lying in front of his house be included in the deed from the other Hacker children. It is also shown that he insisted that the deed be made to him and his wife jointly, and, as witnesses say, "all parties, including Mary Bell, agreed to this," and it was so done. It may be noted here that each of the inter-partes deed (three) are so drawn that the conveyance was to the husband and wife in each instance.

Counsel for appellee contends (1) that the court correctly ruled in holding that Pleas Reed held the property in trust for the benefit of the children of Mary Bell Reed, and had no interest save that which might arise under the terms of our statutes relating to curtesy; (2) that the statute of limitations does not apply because the property was to be held in trust as above said; (3) that if Pleas Reed obtained a one-half interest in the boundary, it was by actual fraud.

Taking up the last ground urged, we have searched the record closely in order to ascertain if there was anything which might tend to indicate fraud, but have been unable to place a finger on any evidence which shows fraud. There is no plea of fraud. There is a plea of mistake, but this is in nowise proven or manifested by the proof. It does appear that Pleas Reed, when it came time to join his wife in signing the deed to the other parties, did some close trading, by which there was deeded to him and his wife 12 or 15 acres more than the original boundary which had first been set aside to Mary Bell. However, there was no under-

hand move; according to the proof, it was done with the full knowledge and acquiescence of the wife. The proof introduced on behalf of defendants seems to bear out the fact that the entire transaction was done with the consent of the wife, certainly with her knowledge

In reading the briefs filed, we were impressed with the idea that the deed itself might show something which would upon analysis manifest a trust. However, the deed, as are the other two (inter partes), is nothing more or less than a general warranty deed conveying to the grantees a joint interest in the boundary, without words, terms, or expressions, which would indicate a trust, or a purpose to create a trust or remainder interest.

We agree with counsel for appellee in his statement of the well-founded principle of law, to the effect that "trusts result ex maleficio where one obtains the title to property in violation, expressed or implied, of some duty owed to one who is equitably entitled." This is sound, and we have applied it in numerous cases. However, we find absolutely nothing in the entire record which would authorize us to apply the ex maleficio or ex delicto principle here, which we have never refused to apply when it appeared necessary to do complete justice, but the pleadings, and the testimony adduced are far from such as would justify us in calling those principles in play here. The general rule is that in order to establish a parol trust the testimony must be such as to leave in the mind of the court no reasonable doubt as to the truth of the facts necessary to establish the claimed trust. Having reached the conclusion that— even considering all the proof introduced on behalf of appellees, much of which was incompetent—the appellees failed to establish their defense, we are of opinion that the court erroneously held that Pleas Reed did not own a one-half undivided interest in the boundary of land in dispute.

This leaves for consideration the attempted cross-appeal by the attorney, who answered as guardian ad litem. The court on his motion allowed a fee of $35 to be taxed as costs and to this order plaintiffs excepted, but from which they have not attempted to prosecute an appeal. The attorney also objected and excepted to the allowance. Later he moved in this court for a cross-appeal, and this motion was sustained. Upon re-

consideration we have determined that this motion should not have been sustained, since it was improperly granted. Appellant was not originally an appellant or appellee. Construing section 755 of the Civil Code of Practice, we have held that cross-appeal can only be prosecuted against an appellant appearing on the record, and that no cross-appeal is allowable as against an appellee. It can only be allowed to review an adverse judgment in favor of part or all of the appellants. Security Trust Co. v. Ins. Co., 259 Ky. 628, 82 S. W. (2d) 828; Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 A. L. R. 346. These cases also show clearly our authority to disregard an order allowing a cross-appeal, when the same has been erroneously granted.

The order sustaining motion for cross-appeal is set aside, and judgment on the original appeal is reversed with directions to the court to set same aside, and in its stead enter a judgment decreeing that Pleas Reed, at the time of the execution of the mortgage, was the owner of an undivided one-half interest in the boundary of land in question, and for further proceedings consistent herewith.