## Moore et al v. Terry et al.

March 26, 1943.

728

Clark Pratt for appellant.

Carl D. Perkins and Combs & Combs for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

In 1908 appellant, B. T. Moore, was convicted of illegally manufacturing whiskey and was given a prison term. On Sept. 15, 1908, preparatory to going to prison, he executed two deeds to his wife, Polly Moore, conveying to her two tracts of land constituting his farm of some 300 acres in Knott County in order that she might better care for herself and their children during his absence.

After serving six months he was released, returned to his family and resumed the management and control of his farm. Mrs. Moore became desperately ill in 1914 and expressed a desire to reconvey the farm to her husband. She was informed that she could not deed the land directly to him but would have to make the conveyance through a third person. She asked her son, Elliot Moore, (referred to in the record as Eckie) if she conveyed the farm to him, would he in turn execute a deed to his father. Elliott agreed to this arrangement, and Reece Bolen, a notary public, was called in to write the deed.

When Bolen arrived he found Mrs. Moore in a critical condition and engaged her in conversation to determine if she possessed mental capacity sufficient to execute a deed. She told him her husband had conveyed

the farm to her to protect her and the children while he was in prison; 'that she knew death was imminent and she wanted to reconvey the land to Bryant (the name she customarily used in referring to or addressing her husband). Both Bolen and Dr. M. F. Kelley, the physician in attendance, were of the opinion that Mrs. Moore was capable of executing a conveyance. So the former drew a deed from her to Elliot and a second deed from the latter and his wife conveying the farm to Bryant, both deeds bearing the date of Nov. 26, 1914. Neither Bolen nor Bryant was familiar with KRS Section 382.050 (KS Section 506) requiring the husband to join the wife in a deed conveying her property, or of our construction of that statute to the effect that the deed of a married woman in which her husband does not unite is void, and Bryant did not join his wife in the deed to Elliott.

Bryant subsequently re-married and has five children by his second wife. The children of the first wife joined by their spouses brought suit against Bryant, Eckie and the infant children of a deceased son of Bryant, alleging that the deed Polly executed to Eckie (Elliott) was void because Bryant failed to unite therein, and that the heirs of Polly own the farm subject to Bryant's curtesy interest, which they asked be set aside to him and that the balance be allotted to the other defendants and plaintiffs as the heirs of Polly.

By answer, cross-petition and counter-claim Bryant denied the plaintiffs and his co-defendants had title to the land and pleaded affirmatively that he had been in the adverse possession of this farm since 1914 under color of title by virtue of the deed executed to him by Eckie and wife. He further pleaded that when he conveyed this farm to his wife she agreed to reconvey it to him upon his return and that she held same in trust for him during his absence; that she had attempted to carry out her trust agreement by conveying the farm to Eckie under the latter's agreement to convey it to his father. Appropriate pleadings completed the issue.

The chancellor adjudged the children of Polly to be the owners of the land subject to the curtesy of Bryant and he appeals. The questions presented here are: (a) Did Bryant hold this land adversely to Polly's children for the statutory period to give him title? (b) Did his wife hold legal title to the farm under a parol agreement

made with her at the time of the conveyance, and was a constructive trust thereby created?

The proof shows appellant did not hold the farm adversely to the children of Polly, but on the contrary that they asserted an interest in the land soon after their mother's death, and some of them occupied parts of the farm and paid taxes thereon. In 1926 they joined with their father in the execution of an oil and gas lease by virtue of which they claimed and received their proportionate part of the rentals paid thereunder. Where property is jointly occupied, the possession of neither occupant can be deemed adverse to the rights of the other. Howard v. Turner, 287 Ky. 206, 152 S. W. (2d) 589. Therefore Bryant did not obtain title by adverse possession.

Under Section 606, subsec. 2, of the Civil Code of Practice, Bryant was not a competent witness to testify for himself as to the agreement between him and his wife at the time he conveyed this farm to her in 1908, and the chancellor properly sustained the written exceptions filed to his deposition on this point. Hunt v. McCloud, 231 Ky. 801, 22 S. W. (2d) 285. But an attempt was made to prove the agreement by Bolen and Eckie. They both testified in effect that Polly told them just before she executed the deed to Eckie that when Bryant got into trouble he deeded the farm to her for the purpose of caring for her and their children; that she was near death and wanted to convey the land back to Bryant as he was the one who had worked and made it and she wanted him to have a home in his old age. It is noticeable that she said nothing about any agreement she made with Bryant to reconvey the farm to him.

It is the settled rule in this jurisdiction that a constructive trust in real estate may be created by a parol agreement made prior to, or contemporaneous with, the execution of the conveyance. Shortridge v. Shortridge, 207 Ky. 790, 270 S. W. 47; Anglin v. Powell, 235 Ky. 705, 32 S. W. (2d) 54; Stiefvater v. Stiefvater, 246 Ky. 646, 53 S. W. (2d) 926; also see 26 R. C. L. Section 78, p. 1232; 3 Pomroy's Equity Jurisprudence (4th Ed.) Section 1044, p. 2370; annotations 35 A. L. R. 280; 45 A. L. R. 851; Restatement of the Law, Restitution, p. 730, Section 182. And a parol agreement creating a trust in land does not come within the statute of frauds. KRS 371.010, subsec. 6 (KS Section 470, subsec. 6); Newton v. New-

ton's Adm'r, 214 Ky. 278, 283 S. W. 83; Anglin v. Powell, supra.

But the evidence to establish such a trust must be greater than a preponderance—it must be definite, clear and convincing—and it is both closely scrutinized and carefully weighed by courts as its effect is to upset paper title. 26 R. C. L. Section 98, p. 1251; Clark v. Smith, 252 Ky. 50, 66 S. W. (2d) 93; Reed v. Reed, 273 Ky. 502, 117 S. W. (2d) 211; also see annotation in 23 A. L. R. 1500—1550.

In the case at bar the evidence above alluded to not only fails to meet the test of being clear and convincing, but it is no proof at all upon which to base a constructive trust. Appellant relies upon the texts in 26 R. C. L. Section 78, p. 1232, and 65 C. J. Section 14, p. 223, and such cases as Stubbins' Adm'r v. Briggs, 68 S. W. 392, 24 Ky. Law Rep. 230, and Graham v. King, 96 Ky. 339, 24 S. W. 430. These texts and authorities state the rule to be that a constructive trust is created by equity regardless of any actual or presumed intention of the parties to create a trust where the legal title to property is obtained through fraud, misrepresentation, concealment, undue influence or taking advantage of one's weakness or necessities, or through similar means or circumstances rendering it unconscionable for the holder of the legal title to retain the property. But this rule has no application to the facts in the instant case. The husband conveyed the property to his wife for the protection of her and their children while he was confined in prison, but that fact did not constitute a constructive trust. It is not unusual for the head of the family to put the title of the home in his wife or to make a conveyance of it to her when ominous clouds appear on the horizon. And there is no rule of law or equity which says such action creates a constructive trust in his favor. If such were the law, the husband could revoke at pleasure his deed to the wife.

In the instant case there was no misrepresentation, concealment, undue influence or any advantage taken by the wife or any circumstance making it unconscionable for her to retain title to the property. It is true she attempted to reconvey the farm to him just before death laid its hand on her frail body, but Section 506, Ky. Stats., which was repealed by the General Assembly in 1942 (Chapter 152, Section 5, p. 630 of the Acts

of that year), as is indicated in Section 382.050, KRS, was in effect when this deed was made and invalidated that instrument, as previously stated in this opinion, because her husband did not unite therein with her.

The facts in the case at bar clearly distinguish it from Shortridge v. Shortridge, 207 Ky. 790, 270 S. W. 47, upon which appellant relies with so much confidence. There, the husband just before entering prison conveyed his farm to his wife without her knowledge, and shortly thereafter entered into a parol agreement with her that she would reconvey it to him if he survived his confinement. The evidence clearly established that Mrs. Shortridge accepted title to the property under the agreement to reconvey it to her husband upon his release from prison, and we held it established a constructive trust. Here, there was no competent proof of such an agreement and all this record discloses is a general warranty deed conveying a fee simple title to the wife in consideration of $500 and love and affection. The fact that the wife on her death bed made an abortive attempt to reconvey the farm to her husband did not create a constructive trust.

The judgment is affirmed.

Whole Court sitting.