## Leitner's Adm'r et al. v. Grauman et al.

Jan. 18, 1944.

Grover G. Sales and Sidney Baer for appellants.

Lawrence Grauman and Stanley B. Mayer for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellants, plaintiffs below, are the administrator of Abraham Leitner's estate and his heirs-at-law; appellees, defendants below, are executors of and trustees under the will of Lena Leitner, the wife, and devisees under her will; some relatives, but mostly religious or charitable institutions, mainly of Jewish faith. Plaintiffs sought to have the court declare the estate, admittedly held by Mrs. Leitner at her death and disposed of by her will, to have been properties of the husband and wife, because accumulated by the joint efforts of the two, and placed in the name of the wife as a matter of precaution, to safeguard them, thus as urged by appel-

lants constituting a constructive trust, contra to the finding of the chancellor. There is no dispute as to the acquisition, disposition or amount of estate, which consisted of several parcels of real estate valued at $18,000; unregistered U. S. Treasury Bonds of the value of $19,000; a postal certificate for $500, and $1,350 in cash, which latter, and the securities, were at the time of Mrs. Leitner's death, and as far as the record shows, at all times kept in her safety box in a bank.

Mr. Leitner came from Russia to America about forty years ago, and shortly thereafter to Louisville, where he engaged in peddling; later he started a secondhand store, and after a brief period he married in New York and brought his wife to Louisville, where they continued to conduct the store, operated in the name of "Abe Leitner." It is amply proven by testimony of both parties that following the marriage until they retired from the secondhand business some time in 1927 (later for a time engaging in a glove business), the two worked hard from early morning till late at night in the conduct of the business, Mr. Leitner doing the greater part of buying and both in selling. At all times, however, Mrs. Leitner took charge of and kept all proceeds from sales.

Appellees in brief say: "It is not denied by appellees that the husband co-operated in the conduct of the business and contributed his best efforts toward making the business a success; with his limited ability he applied himself and assisted his wife in a conscientious manner," adding "the wife took title to all the property, both real and personal, because the husband wanted her to be the sole and absolute owner thereof." This admission in part is fully borne out by the proof adduced on behalf of the contesting parties, that is, that the estate was the result of the joint activities of both husband and wife, and the proof tends to show that the husband was not disposed to make objection to the arrangement.

Neither husband nor wife could to any extent read or write the English language, speaking broken English, using mostly Yiddish dialect. The two apparently led a contented life; they were extremely frugal and their close attention to business prevented them from extended personal contacts even with relatives. Mrs. Leitner died in April 1941, at about the age of seventy years. The husband, about the same age, died two months fol-

lowing the death of the wife, it being intimated that he deliberately walked into the path of a moving automobile, causing his fatal injury.

In the face of the admission in brief by appellees, it is hardly necessary to go into detail in a recital of the evidence. There were twelve or more witnesses testifying for appellants, relatives of the deceased husband, friends and business acquaintances of both husband and wife. Summarizing this evidence it may be said to be shown that the wife was the dominating influence in the business life. There is no dispute as to the fact that when sales were made by the husband he turned over the money to the wife. This she invested in securities, and real estate, keeping the securities in a doubly locked safety box in a bank, and taking title to the real estate in her name, not evasively but apparently with the knowledge of Mr. Leitner. That she at all times held the purse strings is evidenced by proof that when the husband wanted a ''little change'' to buy meals or make small purchases for himself he was compelled to ask the wife for the money, who sometimes complained that he ''should have enough left from yesterday.'' Mr. Leitner would show no indication of not relishing the plan, except when some suggestion was made thereto by some friend, when he would dismiss the subject by saying that she was not a well woman, and ''whatever she done is all right with me.'' There is no doubt but that Mrs. Leitner loved and respected her husband, but claimed (and it is shown) he was a bad manager and did not know how to take care of money. It was shown that Mr. Leitner looked after the property and worked in the store. Other witnesses said ''they did everything together; she was the boss. * * * he looked after the property and she looked after the money, and he let her have her way. He was a good man, but he was bothered with law suits and was too liberal with his money.'' As to her holding the title to all the properties, one witness said ''he didn't care because she did the right thing by him.'' An attorney, who had formerly represented or advised the two, testified as to his conception of the status; he said that Mrs. Leitner was the dominating personality, and that she handled the money. He was easy going. ''I always understood they worked together in their business. Anything she said was all right. Both were successful and made money. It was my understanding from observation that it was their joint prop-

erty.'' The foregoing is illustrative of and the trend of testimony by witnesses for appellant.

The evidence for appellees shows that the husband was agreeable to the arrangement, even to the extent of the wife's taking and holding the properties as her own. In 1935 the two went together to the office of an attorney with the express purpose of Mrs. Leitner making a will. The terms were discussed by Mrs. Leitner and the attorney in the presence of the husband. Reasons for making this or that bequest were discussed. The discussion went to the extent of a provision in the proposed will for the husband. She wanted him to have such a sum as would afford him a comfortable living and it was finally agreed that there should be paid to him $150 per month during his lifetime. The will carried such a provision, and it named the husband and the two above named personal representatives executors and trustees. Some time in 1937 the two came to the attorney's office and exhibited a contract for the purchase of a piece of real estate, the contract being in the wife's name, and with the knowledge of and without objection by the husband, deed was made and executed conveying the property to the wife. Following the death of Mrs. Leitner the husband, with the other two personal representatives, went to the bank and opened Mrs. Leitner's safety box, and checked the contents. Mr. Leitner laid claim to some jewelry in the box which was turned over to him, but made no further claim. Mr. Leitner saw both personal representatives frequently thereafter and never made claim to any portion of the real or personal properties.

In June 1941 there was an inventory and appraisal made of the personal property, which was signed by the two appellants, representatives, and Mr. Leitner as the ''true and complete inventory of the estate of Lena Leitner.'' It does appear in the record that while Mr. Leitner did not assert an interest of ownership in the properties, he suggested that occasion might arise when he might need more than the $150 trust fund. He was told by attorneys, now appellees in their fiducial capacities, that he would have to abide by the terms of the will, insofar as finances were concerned, but was advised that he might renounce the will and take under our law of descent and distribution. Mr. Leitner considered the proposition, but with hesitancy. The attorney pre-

pared the document and Leitner came to the office early on the morning of June 29, and it was suggested that they go to the clerk's office for its execution. Mr. Leitner was still hesitant. He said: "I don't know whether I should or shouldn't. I will think it over; I don't have to sign today." That afternoon he met with the accident which caused his almost immediate death.

From the recital thus far it may be at once observed that the facts present for determination the sole question as to whether or not the holders of the properties are under the equitable duty to transfer one-half to the claimants on the ground that their opponents would be unjustly enriched if permitted to retain the same. Long v. Reiss, 290 Ky. 198, 160 S. W. (2d) 668, citing Motley's Adm'rs v. Tabor, 208 Ky. 702, 271, S. W. 1064, and Edelmuth v. Wybrant, 53 S. W. 528, 21 Ky. Law Rep. 929. Appellees agree as we do that there is no quarrel with the equitable principle or doctrine, as so frequently announced by this court, but they contend that there is no case to be found where the rule has been applied where the facts show that the husband, without objection turned his properties over to the wife, as they say is the case here.

Appellees at some length distinguish the cases relied upon by appellant. In the Motley case it appears that the husband was the agent of the wife in making time deposits. A certificate had been issued to the wife. Following her death the husband had the certificate issued in his name. The husband "without administration of his wife's estate took possession of the entire fund and appropriated it to his own use ." The Long-Reiss case presents a state of facts quite different from those here presented. There Reiss had violated an agreement to purchase property at a decretal sale for his own and the benefit of others. He took title in his own name and declined to convey to a corporation organized for his, and the benefit of other bondholders. The court met the demands of justice by and in holding the transaction to constitute a constructive agency. The Edelmuth case involved a suit by creditors. The case of Hill's Ex'r v. Young, 157 Ky. 42, 162 S. W. 558, does not support the insistence that Mr. Leitner was the owner of one-half the securities and cash found in Mrs. Leitner's box, and placed there by her after being turned over to her by the husband, without any showing as far as the

record goes that she was merely acting as his agent, or that he was claiming any part of the proceeds. Here it is admitted that .the proceeds of the business resulted from the joint efforts of the husband and wife, but that as accumulated were regularly given to the wife, without claim to any portion of the proceeds, a transaction properly characterized by the chancellor as either a gift by the husband to the wife of his share or an arrangement of convenience or protection whereby one of the parties took title to the whole. Moore v. Terry et al., 293 Ky. 727, 170 S. W. (2d) 29; Hall v. Walton, 291 Ky. 779, 165 S. W. (2d) 806.

The chancellor was inclined to the belief that the husband intended to give the properties to the wife. In reaching this conclusion two facts were persuasive; the making of the will in the manner stated, with full knowledge and acquiescence of the husband, and his acquiescence after her death in the testamentary disposition. In other words, the chancellor concluded that the proof was sufficient to show that Mr. Leitner not only agreed to the arrangement whereby the wife should be the treasurer, but that he surrendered title to the properties. With this conclusion we do not find it difficult to agree.

Counsel for appellant contends that eliminating the testimony of the personal representatives and others of the same effect, though not so elaborate, there would be no proof to indicate that the arrangement carried out was such as to manifest a gift or surrender of title. It is argued that the testimony of the representatives is incompetent under subsection 2 of section 606 of the Civil Code of Practice, which prohibits one from testifying for himself as to any verbal statement or transaction made or had with a person who is dead when the testimony is offered.

The contention is based on the suggestion that the commissions of the representatives would be enhanced if they were successful in administering the estate under the terms of the will, rather than turning over one-half thereof to another representative. Reliance is had on Combs v. Roark, 206 Ky. 454, 267 S. W. 210. In that case we held Mrs. Roark's testimony incompetent, she being at the time she testified administratrix of her husband's estate in which she had a direct pecuniary interest. That the testimony here was not incompetent on

the ground stated, reference may be had to Trevithan's Ex'rs v. Dee's Ex'rs, 221 Ky. 396, 298 S. W. 975, Hunt's Ex'r v. Mutter, 238 Ky. 396, 38 S. W. (2d) 215, Hicks v. Oak's Adm'r, 233 Ky. 27, 24 S. W. (2d) 917, Knuckles v. Howard, 261 Ky. 89, 87 S. W. (2d) 106, and cases cited.

It is complained in brief that the chancellor determined the merits of the case merely on oral argument and without reading the record. The facts were not at all complicated, and there was no dispute concerning facts, which it is said were stated by counsel for both parties, sufficiently to allow the chancellor to apply the law. Regardless of this assertion we have carefully read the record, and find nothing to indicate that the chancellor incorrectly applied the law under the facts; hence the judgment is affirmed.